UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA      :

     :   Hon. Jose L. Linares

     v.      :

     :   Criminal No. 13-183

GREGORY SCHAFFER      :

---

MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S OMNIBUS MOTION *IN LIMINE*

---

PAUL J. FISHMAN
UNITED STATES ATTORNEY
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

JASON S. GOULD
MEREDITH J. WILLIAMS
Assistant U.S. Attorneys

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

 *Investigation into Sexual Assault of The Brooklyn Victim* ......................... 3

 *The Search Warrant for Schaffer's Business Premises* ............................. 6

 *Search of Schaffer's Office and Interview of Schaffer* .............................. 8

 *Search of Schaffer's Electronic Devices* .................................................... 9

 *Charges Against Schaffer in the Eastern District of New York for*
 *his Sexual Assault of the Brooklyn Victim* ............................................... 11

ARGUMENT ..................................................................................................... 12

I. DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE BASED ON THE
 INADEQUACY OF THE JULY 2012 WARRANT HAVE NO MERIT
 BECAUSE THE WARRANT IS PARTICULAR, NOT OVERBROAD, AND
 SUPPORTED BY AMPLE PROBABLE CAUSE ...................................... 12

 A. The July 2012 Warrant met the Fourth Amendment's
  particularity requirement and was not overbroad ........................ 12

 B. The July 2012 Warrant contained sufficient probable cause to
  search Schaffer's electronic devices. ........................................... 16

 C. The Government did not unreasonably delay in obtaining
  the July 2012 Warrant. ............................................................... 19

 D. Law enforcement acted in good faith when it executed
  the July 2012 Warrant. ............................................................... 24

II. DEFENDANT'S REQUEST FOR A HEARING TO DETERMINE
 WHETHER SCHAFFER'S STATEMENTS SHOULD BE SUPPRESSED
 SHOULD BE DENIED AS MOOT ......................................................... 25

III. DEFENDANT'S *IN LIMINE* AND DISCOVERY-RELATED MOTIONS ........ 26

i

A.    Defendant's request for a preliminary hearing regarding the admissibility of prior crimes, wrongs, or other acts evidence is acceptable to the Government. ................................................... 26

B.    If the defendant testifies, the Government intends to impeach him with evidence of his prior convictions in the Eastern District of New York for his sexual assault of the Brooklyn Victim. ................................................................................ 26

C.    The Government has complied with its *Brady* obligations and will continue to do so........................................................... 32

D.    The Government has complied with its *Giglio* obligations and will continue to do so........................................................... 32

E.    The Court should deny the defendant's request for early production of *Jencks* materials. ................................................... 34

F.    Defendant will be provided with the required reports and curriculum vitae regarding the Government's expert witnesses well in advance of trial.................................................................. 36

G.    The Government does not object to defendant's request to file additional motions where appropriate......................................... 37

CONCLUSION ................................................................................. 38

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                   <u>**Page(s)**</u>

*Andresen v. Maryland,*
   427 U.S. 463 (1976) ................................................................................ 16

*Brady v. Maryland,*
   373 U.S. 83 (1963) .................................................................................. 32

*Buehl v. Vaughn,*
   166 F.3d 163 (3d Cir. 1999) ............................................................ 32, 33

*Coolidge v. New Hampshire,*
   403 U.S. 443 (1971) ................................................................................ 13

*Giglio v. United States,*
   405 U.S. 150 (1972) ........................................................................ 32, 33

*Gov't of V.I. v. Bedford,*
   671 F.2d 758 (3d Cir. 1982) .................................................................. 27

*Illinois v. Gates,*
   462 U.S. 213 (1983) ................................................................................ 17

*Palermo v. United States,*
   360 U.S. 343 (1959) ................................................................................ 34

*Segura v. United States,*
   468 U.S. 796 (1984) ................................................................................ 20

*United States v. American Investors of Pittsburgh,*
   879 F.2d 1087 (3d Cir. 1989) ................................................................ 13

*United States v. Ammar,*
   714 F.2d 238 (3d Cir. 1983) .................................................................. 36

*United States v. Bissell,*
   954 F. Supp. 841 (D.N.J. 1996) ...................................................... 33, 35

*United States v. Brown,*
   303 F.3d 582 (5th Cir. 2002) ................................................................ 35

*United States v. Burgard,*
   675 F.3d 1029 (7th Cir. 2012) .............................................................. 20

*United States v. Burgess,*
   576 F.3d 1078 (10th Cir. 2009) .................................................................. 14

*United States v. Caldwell,*
   760 F.3d 267 (3d Cir. 2014) ............................................................... passim

*United States v. Causey,*
   9 F.3d 1341 (7th Cir. 1993) ..................................................................... 30

*United States v. Christie,*
   717 F.3d 1156 (10th Cir. 2013) ................................................... 20, 21, 23

*United States v. Clutter,*
   674 F.3d 980 (8th Cir. 2012) ................................................................ 20-21

*United States v. Fautz,*
   812 F. Supp. 2d 570 (D.N.J. 2011) ......................................................... 14

*United States v. Figueroa,*
   No. 15-0098(KM), 2016 WL 126369 (D.N.J. Jan. 11, 2016) ....................... 30

*United States v. Higgs,*
   713 F.2d 39 (3d Cir. 1983) ................................................................. 33, 34

*United States v. Hill,*
   976 F.2d 132 (3d Cir. 1992) ..................................................................... 35

*United States v. Hodge,*
   246 F.3d 301 (3d Cir. 2001) ........................................................ 17, 24, 25

*United States v. Johnson,*
   302 F.3d 139 (3d Cir. 2002) ..................................................................... 31

*United States v. Kepner,*
   843 F.2d 755 (3d Cir. 1988) ................................................................ 15-16

*United States v. Laist,*
   702 F.3d 608 (11th Cir. 2012) ................................................................. 23

*United States v. Leon,*
   468 U.S. 897 (1984) ................................................................................ 24

*United States v. Miller,*
   No. 15-202, 2016 WL 1408102 (D.N.J. Apr. 11, 2016) ................................ 33

*United States v. Moore,*
  916 F.2d 1131 (6th Cir. 1990) ...................................................... 21

*United States v. Muhammad,*
  120 F.3d 688 (7th Cir. 1997) ....................................................... 35

*United States v. Pavulak,*
  700 F.3d 651 (3d Cir. 2012) ........................................................ 24

*United States v. Place,*
  462 U.S. 696 (1983) .................................................................... 20

*United States v. Scolnick,*
  392 F.2d 320 (3d Cir. 1968) ........................................................ 34

*United States v. Serrano,*
  No. 09-913, 2012 WL 6561556 (D.N.J. Dec. 4, 2012) ............................ 33-34

*United States v. Stabile,*
  633 F.3d 219 (3d Cir. 2011) ........................................... 19, 20, 23

*United States v. Vallimont,*
  378 Fed. Appx. 972 (11th Cir. 2010) ............................................ 23

*United States v. Vella,*
  562 F.2d 275 (3d Cir. 1977) ........................................................ 36

*United States v. Williams,*
  3 F.3d 69 (3d Cir. 1993) .............................................................. 24

*United States v. Wilson,*
  No. 15-CR-94,12016 WL 2996900 (D.N.J. May 23, 2016) ..................... 28, 30

*United States v. Yusuf,*
  461 F.3d 374 (3d Cir. 2006) ............................................. 13, 14, 16

## Statutes

18 U.S.C. § 875 ........................................................................ 9, 10, 14

18 U.S.C. § 2251(a) ............................................................... 1, 9, 10, 14

18 U.S.C. § 2252 ........................................................................... passim

18 U.S.C. § 2256 .............................................................................. 15

18 U.S.C. § 2422 ........................................................................... passim

18 U.S.C. § 3500(a) ............................................................................ 34

## **Rules**

Fed. R. Crim. P. 26.2 ........................................................................ 35

Fed. R. Crim. P. 41(g) ....................................................................... 21

Fed. R. Evid. 413 ......................................................................... 26, 29

Fed. R. Evid. 414 ......................................................................... 26, 29

## **Others**

U.S. Const. amend. IV ...................................................................... 13

Defendant Gregory Schaffer was indicted on March 13, 2013 by a federal grand jury in Newark, New Jersey of two counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2, and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2. Trial on these charges is scheduled to begin on March 1, 2017.

## **INTRODUCTION**

The Government respectfully submits this memorandum of law in opposition to Defendant's Motions *in Limine*, filed on January 13, 2017. *See* ECF No. 35.

In his omnibus motion, the Defendant primarily seeks to suppress evidence of his videotaped sexual abuse of two New Jersey minor victims and other child pornography, which were discovered on electronic devices stored at his office in Jersey City, New Jersey in June and July 2012. That evidence forms the basis of the three-count Indictment in the instant case. In support of his motion to suppress, defendant makes a series of arguments attacking the sufficiency of the search warrants leading to the recovery of that evidence. None of them has merit.

As explained in detail below, both the warrant to search Schaffer's office in Jersey City, New Jersey on June 3, 2012 and the warrant to search the electronic devices recovered from Schaffer's office, obtained and executed on July 31, 2012, contained precise information concerning the places to be searched and the items to be seized—thus satisfying the particularity requirement of the Fourth Amendment. They were also both supported by

ample probable cause.  And, contrary to defendant's assertion, the Government did not unreasonably delay in obtaining the warrant to search Schaffer's electronic devices after they had been recovered from his business premises. Because both warrants comported with the requirements of the Fourth Amendment, defendant's motion to suppress should be denied.

Defendant also seeks to suppress Schaffer's voluntary statements to law enforcement when they interviewed him on June 3, 2012 during the search of his office.  Although the statements were taken in accordance with federal law and are admissible, the issue is moot because the Government does not intend to introduce any of Schaffer's statements during that interview in its case-in-chief at trial.[1]

Defendant also raises a host of other standard *in limine* and discovery-related motions, which are discussed in turn at pages 26-37 below.

## STATEMENT OF FACTS

At a suppression hearing or trial, the Government anticipates that it will introduce evidence demonstrating the following facts:[2]

---

[1] If Schaffer testifies at trial, the Government reserves its right to use his statements to law enforcement on June 3, 2012 during cross-examination.

[2] The facts set forth here are only those facts relevant to resolving the issues raised in Defendant's Omnibus Motions *in Limine* and do not include other facts the Government intends to introduce at trial concerning Schaffer's alleged production and possession of child pornography related to two minor New Jersey victims.

### *Investigation into Sexual Assault of the Brooklyn Victim*

In late February or early March 2012, a 15-year-old girl from Brooklyn, New York (the "Brooklyn Victim") posted an ad on Craigslist looking for a job. She received a response in early March from "John Archambeault," who was subsequently identified as the defendant, Gregory Schaffer.  Schaffer stated that he was seeking part-time help for one of his "stores" at a mall in Jersey City, New Jersey.  In subsequent email communication, Schaffer and the Brooklyn Victim arranged to meet to further discuss a purported employment opportunity for the Brooklyn Victim in one of Schaffer's "stores."

During the email exchange, Schaffer asked for the Brooklyn Victim's age, and she told him that she was 15 years old.  He also asked whether she would be coming to New Jersey with her parents or alone, and asked her to send him a photograph for "security."

On or about March 17, 2012, the Brooklyn Victim traveled from her home in Brooklyn to Schaffer's office in Jersey City, New Jersey, accompanied by a friend, who was also a minor (the "Friend").  Once inside the office suite area, Schaffer took the Brooklyn Victim into a private office area and closed the door, leaving the Friend in the waiting area.  During the March 17, 2012 meeting, Schaffer told the Brooklyn Victim that he was probably going to have her work in his Victoria's Secret store.  Schaffer also asked the Brooklyn Victim whether she was sexually active and whether she used drugs.  Schaffer gave the Brooklyn Victim paperwork for her guardian (her grandmother) to sign, which she did.

3

That night, when the Brooklyn Victim emailed Schaffer to advise him that the paperwork was signed, Schaffer responded by email asking her if she could return the next day with the paperwork.  He added that she should come alone because it might be her first day of work.

On or about March 18, 2012, the Brooklyn Victim again traveled from her home in Brooklyn to Schaffer's office.  She was alone.  At the office, Schaffer gave the Brooklyn Victim a "confidentiality agreement," which he asked her to sign.  Schaffer also gave the Brooklyn Victim an employment contract to sign.  The Brooklyn Victim signed both agreements without reading them carefully.

After she had signed them, Schaffer informed the Brooklyn Victim that by signing them, she had agreed to have sex with him.  Schaffer then had the Brooklyn Victim try on "outfits" for him, which included a bathing suit, and took pictures of the Brooklyn Victim in the bathing suit.  Later, Schaffer removed his pants, revealing that he was wearing a Speedo bathing suit, and told the Brooklyn Victim that he wanted to photograph them together.

At this point, the Brooklyn Victim told Schaffer that she did not feel comfortable.  The defendant asked the Brooklyn Victim if she had a boyfriend, to which she responded that she did and that he was 17 years old.  Schaffer threatened to "report" the boyfriend—impliedly because the Brooklyn Victim and the boyfriend were having sex—if she broke the contract.  Schaffer also threatened to sue the Brooklyn Victim's grandmother for breach of contract.

After having the Brooklyn Victim lie on his desk, Schaffer took a white pill and inserted it into her vagina, telling her it was "birth control." The Brooklyn Victim asked Schaffer to use a condom, which he took from the drawer in his desk and put on. Schaffer then had nonconsensual sexual intercourse with the Brooklyn Victim. During the sexual assault, the Brooklyn Victim attempted to reach for her cell phone several times, but Schaffer blocked her hand.

Afterward, the defendant told the Brooklyn Victim that he would remove the sex part of the contract and gave her a new contract. Schaffer shredded the contract that the Brooklyn Victim had signed. Schaffer told the Brooklyn Victim not to speak to anyone about their sexual encounter because it would breach their confidentiality agreement.

During the time that the Brooklyn Victim was in the defendant's office, there was a black camera or video camera on a tripod in the office. The black camera was in the room when the Brooklyn Victim was changing into the bathing suit, and then Schaffer replaced it with a red camera after she had changed into the bathing suit. Schaffer removed a memory card from the black camera and inserted it into the laptop on his desk. The Brooklyn Victim stated that Schaffer put the red camera away during the sexual intercourse.

The Brooklyn Victim promptly contacted law enforcement and told them what Schaffer had done to her. Schaffer contacted the Brooklyn Victim on March 19, 2012, again purporting to have a job for her. Shortly after that communication, law enforcement began consensually impersonating the

5

Brooklyn Victim using her email account.  On or around March 22, 2012, the Brooklyn Victim and her Friend both identified Schaffer from a photo array. Throughout the remainder of March, April, and May 2012, Schaffer attempted to persuade the Brooklyn Victim to travel back to New Jersey.  Schaffer and law enforcement, posing as the Brooklyn Victim, also referred to the sexual attack that took place on March 18, 2012 a number of times.

### The Search Warrant for Schaffer's Business Premises

Based on their investigation of the sexual assault of the Brooklyn Victim, on June 1, 2012, agents from Homeland Security Investigations ("HSI") applied for a search warrant for Schaffer's business premises in Jersey City, New Jersey.  The application described in precise detail the premises to be searched, which was Schaffer's small office on the first floor of a three-story building in Jersey City, New Jersey.  *See* Ex. A at GS000276 (Attachment A).[3] The application set forth how Schaffer's office could be accessed through various doors on the premises.  *Id.*  Law enforcement also identified the precise items it intended to search for and seize if located at Schaffer's office, including:

> Cameras, audio-visual equipment, digital media (e.g. video and audiotapes, CDs, DVDs and flash drives), photographs, women's clothing, swimsuits and lingerie, a laptop computer, condoms, a hospital gown, employment-related documents (e.g. contracts and confidentiality agreements), and items and documents relating to the identity of the individual or individuals owning, renting, occupying or using the PREMISES or relating to the enticement of minors to travel in interstate commerce for the purpose of engaging in illegal sexual acts and the production of child pornography, in

---

[3] All references to "Ex. __" refer to Exhibits attached to Defendant's Omnibus Motions *in Limine*, filed on January 13, 2017.  *See* ECF No. 35.

> violation of Title 18, United States Code, Section 2422 and
> 2252A(a)(5)(B), respectively.

*Id.* at GS000277 (Attachment B). Finally, law enforcement explained that the items it was looking for would constitute "[e]vidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2422 and 2252A(a)(5)(B)." *Id.* at GS000278 (Attachment C).

HSI Special Agent Robert Mancene submitted an 11-page sworn affidavit in support of the search-warrant application. *See id.* at GS000279-289 (Attachment D). In the affidavit he described his qualifications and experience in investigating child sex abuse crimes; the premises law enforcement intended to search and the items it was searching for; and the probable cause supporting the search-warrant application based on law enforcement's three-month investigation into Schaffer's enticement across state lines and subsequent sexual assault of the Brooklyn Victim. *See id.* Mancene's affidavit also set out the basis of his knowledge: HSI's interview of the Brooklyn Victim; emails law enforcement had collected between the Brooklyn Victim and Schaffer; law enforcement's interview of the Friend and of the Brooklyn Victim's boyfriend; the photo identification of Schaffer by the Brooklyn Victim and her Friend; and public records checks to confirm that Schaffer did not in fact own or operate any of the stores he claimed that he did. *See id.*

Based on the probable cause set forth in Special Agent Mancene's affidavit, United States Magistrate Judge Patty Shwartz in New Jersey issued a search warrant on June 3, 2012 (the "June 2012 Warrant"). The June 2012

Warrant authorized the search of Schaffer's office in Jersey City, New Jersey to seize the property identified in the application materials. *See id.* at GS000270-274.

### Search of Schaffer's Office and Interview of Schaffer

On Sunday, June 3, 2012, special agents of HSI executed the June 2012 Warrant at Schaffer's office located in Jersey City, New Jersey. At approximately 3:30 p.m. on that day, HSI Special Agent Megan Buckley approached the door of the location and knocked. There was no answer, so Agent Buckley opened the door, which was unlocked. She found Schaffer standing immediately behind the door. Agent Buckley identified herself and indicated that the agents were there to execute a federal search warrant. She placed one hand on Schaffer's arm and used her other arm to direct him so that he was facing the wall. Other agents then came into the area to perform a security sweep. In total nine agents were present. The agents did not have their firearms drawn. Following the security sweep, agents began searching Schaffer's office.

Meanwhile, Special Agent Mancene told Schaffer that he was not under arrest and that agents would like to speak with him. Schaffer agreed. Special Agents Mancene and Buckley then interviewed Schaffer for approximately an hour. Early in the interview, Schaffer admitted that the Acer laptop computer in his office belonged to him and that he did not own any other computers. He also stated that he owned a flash drive that he stored in his office, along with numerous CDs and DVDs. Following the interview, Agent Mancene, after

8

speaking with the United States Attorney's Office for the Eastern District of

New York, arrested Schaffer.

As a result of the search of Schaffer's office, HSI agents recovered the

following items, among other things:

- Vivitar DVR Camcorder with Micro SD card;
- Acer laptop computer;
- Motorola cell phone;
- Micro SD card reader;
- Thumb drive, hard drive, zip drive, and flash drive;
- Numerous CDs and DVDs;
- Used and unused condoms and wrappers;
- Various sex paraphernalia (including white pills, lubricant, and handcuffs);
- Documents, including a letter from the Brooklyn Victim, a document entitled "Sex Contract," and employment applications; and
- A folder containing computer-printed photographs of teenage-appearing girls wearing bathing suits or naked.

*See* Ex. B at GS000219-220; GS000228 (¶9)).

### *Search of Schaffer's Electronic Devices*

After collecting these items from Schaffer's office and identifying an

expert who could forensically examine them, HSI agents applied for an

additional search warrant requesting authorization to search the 12 electronic

media devices.  *See* Ex. B at GS000211 (Attachment A).  The warrant described

precisely what the forensic expert would be looking for on Schaffer's electronic

devices: "The information shall be reviewed by the government only for the

purpose of identifying and seizing information that constitutes fruits, evidence

and instrumentalities of violations of Title 18, United States Code, Sections

875, 2422(a), 2422(b), 2251(a) and 2252(a)(4)(B) . . . ."  *See* Ex. B at GS000212

9

(Attachment B).  It then listed the information on Schaffer's devices that could contain "fruits, evidence, or instrumentalities" of violations of those statutes, including:

- "Visual images or depictions of Jane Doe [i.e. the Brooklyn Victim] or other potential victims"; *see id.* at No. 4;

- "Images of child pornography and files containing images of child pornography"; *see id.* at No. 12; and

- "[V]ideos, and other recordings of visual depictions of minors engaged in sexually explicit conduct"; *see id.* at No. 15.

The search warrant also contained provisions to search for evidence of ownership, operation, or control of the electronic devices.  *See, e.g., id.* at GS000213-215 (Nos. 19, 20, 26, 29, 30, 31, 32 and 33).

Based on HSI's months-long investigation, Special Agent Mancene submitted an 18-page affidavit in support of the search-warrant application, setting forth the evidence establishing probable cause to believe that Schaffer's electronic devices contained evidence, fruits, or instrumentalities of:

> the crimes of extortion, coercion and enticement to travel for the purpose of engaging in illegal sexual activity, coercion and enticement of a minor for the purpose of engaging in illegal sexual activity, production of child pornography and possession of child pornography, in violation of 18 U.S.C. §§ 875, 2422(a), 2422(b), 2251(A) and 2252(a)(4)(B), respectively.

*See* Ex. B (GS000220).

On July 31, 2012, based on the probable cause set forth in Special Agent Mancene's affidavit, United States Magistrate Judge Joan M. Azrack in the Eastern District of New York issued a search warrant (the "July 2012 Warrant") authorizing law enforcement to search Schaffer's electronic devices for evidence

10

of the enumerated child-pornography crimes listed above.  Special Agent John Simonello of the United States Secret Service, a forensic computer expert, began searching Schaffer's electronic devices that very day.

During his forensic search, Special Agent Simonello found videos of the Brooklyn Victim trying on a bathing suit in Schaffer's office while Schaffer "adjusted" it as an excuse to grope her.  He also discovered five videos that depict Schaffer sexually abusing two minor victims from New Jersey—the conduct giving rise to Counts One, Two, and Three of the Indictment in the instant case.  Special Agent Simonello also discovered approximately 100 other depictions of child pornography on Schaffer's electronic devices.

### Charges Against Schaffer in the Eastern District of New York for his Sexual Assault of the Brooklyn Victim

Schaffer was indicted by a federal grand jury in the Eastern District of New York on July 2, 2012 on the following four charges arising from his enticement across state lines and subsequent sexual assault of the Brooklyn Victim: coercing and enticing a minor to travel in interstate commerce to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(a); coercing and enticing a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b); and attempting to commit both of those offenses.  After a trial in July 2014, a jury convicted Schaffer on all four counts with respect to his conduct with the Brooklyn Victim.  On July 24, 2015, the Honorable Allyne R. Ross sentenced the defendant to a term of imprisonment of 25 years.

**ARGUMENT**

I.  **DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE BASED ON THE INADEQUACY OF THE JULY 2012 WARRANT HAVE NO MERIT BECAUSE THE WARRANT IS PARTICULAR, NOT OVERBROAD, AND SUPPORTED BY AMPLE PROBABLE CAUSE**

Defendant contends that evidence recovered from his electronic devices pursuant to the July 2012 Warrant should be suppressed for the following reasons: (1) the search warrant lacked particularity; (2) the warrant was overbroad; (3) the warrant was based on allegations that lack probable cause; and (4) the delay between the Government's seizure of Schaffer's electronic devices and its obtaining of a warrant to search them was unreasonable. *See* Def.'s Mot. to Suppress at 3.[4]  As explained in detail below, each of these arguments is baseless, and the evidence recovered from Schaffer's electronic devices therefore should not be suppressed.

A.  **The July 2012 Warrant met the Fourth Amendment's particularity requirement and was not overbroad.**

Defendant argues that the July 2012 Warrant "lacks sufficient particularity and is therefore invalid." *Id.* at 4.  Specifically, he contends that the July 2012 Warrant "gives unlimited discretion to law enforcement officers in executing the search," and law enforcement agents are "given carte blanche to search whatever they wish." *Id.*  Defendant also argues that the July 2012 Warrant was impermissibly overbroad.  *See id.* at 6.  He asserts that Agent Mancene's affidavit "did not establish probable cause to search and seize every

---

[4] All references to "Def.'s Mot. to Suppress" refer to Defendant's Memorandum in Support of Pretrial Motions, filed on January 13, 2017.  *See* ECF No. 35.

piece of data or thing stored on the numerous pieces of electronic media that were seized." *See id.* He therefore contends that the July 2012 Warrant gave law enforcement "unfettered power to search and seize everything stored on the electronic media," which amounted to "plain overbreadth." *Id.*

Both of defendant's arguments are apparently based on the language "including, but not limited to" included in a single paragraph in the itemized list of "Particular Things to be Seized" in Attachment B of the July 2012 Warrant. *See* Ex. B at GS000213 (¶16); Def.'s Mot. to Suppress at 4-5, 7.

The Fourth Amendment provides that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. General warrants violate the Fourth Amendment because they essentially authorize "a general exploratory rummaging in a person's belongings." *United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). However, "[t]he fact that the warrant authorized a search for a large amount of documents and records does not necessarily render the search invalid so long as there exists a sufficient nexus between the evidence to be seized and the alleged offenses." *United States v. American Investors of Pittsburgh*, 879 F.2d 1087, 1105-06 (3d Cir. 1989).

Here, the July 2012 Warrant spelled out in detail exactly the places law enforcement could search and tightly restricted the items it could seize. It left almost no discretion to law enforcement and certainly did not give them "carte blanche" to seize what they wished. For example, in Attachment A to the July

13

2012 Warrant, law enforcement listed the 12 electronic devices it sought to search.  *See* Ex. B at GS000211 (Attachment A).  Attachment B then provided key language narrowing the search to evidence relating to five enumerated federal offenses: specifically, 18 U.S.C. §§ 875, 2422(a), 2422(b), 2251(a), and 2252(a)(4)(B).  *See* Ex. B at GS000212 (Attachment B).

By limiting the search to evidence related to these specific crimes, the July 2012 Warrant "particularly described" what law enforcement officers could permissibly search for and created a strong nexus between the evidence sought and the crimes being investigated.  *See, e.g.*, *Yusuf*, 461 F.3d at 395 (finding that a limitation in a warrant for agents to search for evidence of specifically enumerated federal crimes helps satisfy the particularity requirement); *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009) (concluding that a warrant authorizing a search of defendant's home for evidence connected with the crime of drug trafficking had "sufficiently particularized language creating a nexus with the crime to be investigated . . . and therefore was not overly broad") (internal quotation marks omitted); *United States v. Fautz*, 812 F. Supp. 2d 570, 604 (D.N.J. 2011) (finding that warrant that specified the suspected crimes under investigation and itemized materials to be seized that fell within the scope of those specified crimes was not overbroad or a general warrant).  Far from giving law enforcement officers "carte blanche" or "unfettered power" to search for evidence in Schaffer's belongings, the July 2012 Warrant closely circumscribed what law enforcement could permissibly search for.

14

Moreover, the Government's inclusion of the phrase "including but not limited to" in a single paragraph in the list of items to be seized does not render the entire July 2012 Warrant impermissibly overbroad.  *See* Ex. B at GS000213 (¶16).  Paragraph 16 of Attachment B covers "Records, information or correspondence pertaining to the possession, access with intent to view, transportation, receipt, distribution and reproduction of sexually explicit material relating to children, as defined in 18 U.S.C. § 2256, including but not limited to . . ." and then lists certain types of illustrative records, information, or correspondence.  *See id.* ¶¶ 16(a) and 16(b).  Far from using this phrase "in order to give law enforcement the ability to conduct a wholesale search and seizure of the electronic media" or "to make clear to law enforcement that they have no restrictions whatsoever in terms of how they may conduct the search and what they may seize," as defendant contends, *see* Def.'s Mot. to Suppress at 7, the Government merely used that language to illustrate the types of information it could seize under that specific paragraph.  The phrase does not broaden whatsoever what law enforcement could legally seize pursuant to the July 2012 Warrant, let alone impermissibly so.

Defendant's contention that this one phrase in a single paragraph in the July 2012 Warrant renders the entire warrant overbroad is contrary to well-established precedent, which has sanctioned the use of far more broad, catch-all language in search warrants than the Government used here.  *See United States v. Kepner*, 843 F.2d 755, 763 (3d Cir. 1988) (finding that a search warrant seeking "documents, records, and personal effects" of defendant in

15

connection with an investigation into violations of the Taft-Hartley Act was not overbroad because more precise language of the affidavit could not have served to limit the scope of the search).  In *Yusuf*, for example, the Third Circuit expressly found that the use of a catch-all provision—which authorized the government to search for evidence of money laundering "and illegal activities"— did not render the warrant unconstitutionally overbroad.  461 F.3d at 396. Likewise, in *Andresen v. Maryland*, 427 U.S. 463, 479 (1976), the search warrant at issue added the phrase "together with other fruits, instrumentalities and evidence of crime at this (time) unknown" to the list of evidence to be searched.  The Supreme Court rejected the argument that this catch-all phrase rendered the warrant overbroad because the context of the warrant made clear that the phrase related to the suspected crime specified in the rest of the sentence and in the affidavit.  *Andresen*, 427 U.S. at 479-82.

For these reasons, the July 2012 Warrant did not lack the requisite particularity under the Fourth Amendment, nor was it impermissibly overbroad.

**B.    The July 2012 Warrant contained sufficient probable cause to search Schaffer's electronic devices.**

Defendant contends that the July 2012 Warrant lacked probable cause. *See* Def.'s Mot. to Suppress at 7-8.  But Special Agent Mancene's affidavit

contained overwhelming information linking Schaffer, his office, and his electronic devices to his child-pornography crimes.

This Court must give "great deference" to the probable cause determination of the magistrate judge. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001). "The Court need not determine whether probable cause actually existed, but only whether there was a substantial basis for finding probable cause." *Id.* Probable cause is established if there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

As described in the Statement of Facts at pages 7-11 above, the affidavit supporting the July 2012 Warrant includes, among other things, the following facts:

- The Brooklyn Victim's account of how she was enticed by Schaffer to travel to New Jersey through a false ad on Craigslist and subsequent email communications; (*see* Ex. B at GS000222-223 (¶¶4(a)-(c)));

- Schaffer knew that the Brooklyn Victim was a minor; (*see id.* at GS000223 (¶4(c)));

- Shaffer presented the Brooklyn Victim with bogus "contracts" for her to sign for the nonexistent job Schaffer was "offering" her; (*see id.* at GS000224 (¶4(g)));

- Schaffer photographed the Brooklyn Victim trying on bathing suits in his office; (*see id.* at GS000224 (¶4(h)));

- The Brooklyn Victim noticed at least two video cameras operating in Schaffer's office while she was trying on various bathing suits; (*see id.* at GS000225-226 (¶4(n))); and

17

- The Brooklyn Victim observed Schaffer remove a memory card from one of the video cameras and insert it into his laptop computer on his desk; (*see id.* at GS000225-226 (¶4(n))).

The Brooklyn Victim's account was corroborated in part by the Friend who accompanied her to Schaffer's office in New Jersey and her boyfriend.  *See id.* at GS000226-28 (¶¶5-6).

After HSI agents executed the June 2012 Warrant and seized several electronic devices, they applied for the July 2012 Warrant so they could search each device for evidence of child-pornography crimes.  Special Agent Mancene's affidavit set forth the facts known to HSI based on its months-long investigation, and it included detailed information that the agents learned from their search of Schaffer's office.  Specifically, Special Agent Mancene explained that agents had recovered the following items from Schaffer's office:

> PREMISES A-L [i.e. the electronic devices], a folder containing a letter from the Brooklyn Victim, computer-printed photographs of teenage-appearing girls wearing bathing suits or naked, condoms (both used and unused), sexual paraphernalia, including lubricants, white pills, handcuffs and sex toys, employment applications, some of which include questions about the applicant's sexual activity and dating status, and a document entitled "Sex Contract."

*Id.* at GS000228 (¶9).  Special Agent Mancene also described another document discovered by law enforcement during the search that appeared to be a letter from Schaffer to another female threatening to rape her if she did not comply with Schaffer's demands.  *Id.* at GS000229 (¶9(a)).

Given this abundant and detailed information, defendant's contention that the July 2012 Warrant is "deficient" and that it contains "merely a bare suspicion that criminal evidence will be found in the place to be searched" is

18

entirely inconsistent with the facts.  Special Agent Mancene's affidavits contain more than enough information to establish probable cause to believe that evidence of a crime would be found on Schaffer's electronic devices.  The Court therefore should deny defendant's suppression motion based on that argument.

### C.    The Government did not unreasonably delay in obtaining the July 2012 Warrant.

Defendant argues that the time between the Government's execution of the June 2012 Warrant authorizing a search of Schaffer's office and the execution of the July 2012 Warrant authorizing a search of the electronic devices recovered from Schaffer's office—a period of less than two months—was unreasonable and thus requires suppression of the fruits of the Government's search of Schaffer's electronic devices.  *See* Def.'s Mot. to Suppress at 9-12. Defendant's arguments are without merit and should be denied because the brief time the Government took to obtain the July 2012 Warrant was reasonable given its strong interest in searching Schaffer's electronic devices with a trained expert and Schaffer's nonexistent property interest in their return.

The reasonableness of the delay in seeking a warrant for a search of the electronic devices depends on the totality of circumstances, requiring a balancing of an individual's Fourth Amendment rights with the importance of governmental interests.  *See United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011) (explaining that reasonableness is determined by weighing the nature and quality of the intrusion on the individual's Fourth Amendment

19

interests against the importance of the governmental interests alleged to justify the intrusion) (citing *United States v. Place*, 462 U.S. 696, 703 (1983)); *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (same); *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (same).

The absence of any demonstrated interest at all by a defendant in obtaining the return of his or her property has been the dispositive factor in evaluating the reasonableness of any search affected by the passage of time. *See Stabile*, 633 F.3d at 235-36 (finding that defendant's eighteen-month delay before asking for return of hard drives "undermine[d]" possessory interest claim); *Christie*, 717 F.3d at 1163 (emphasizing that there was "[n]o call to the authorities, no letter, no motion to the court," to object to seizure of computer); *Burgard*, 675 F.3d at 1033 (explaining that in evaluating the weight of a person's possessory interest, "it can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it—perhaps by checking on the status of the seizure or looking for assurances that the item would be returned."). Courts have also held that, where individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is greatly reduced. *See Segura v. United States*, 468 U.S. 796, 813 (1984) (holding that defendants' possessory interest in the seized property was "virtually nonexistent" because the defendants were under arrest when the seizure first took place and remained "in the custody of the police during the entire period" that the government retained the seized property); *United States v. Clutter*, 674 F.3d 980, 984 (8th Cir. 2012) (holding that the government's

seizure of three computers "did not meaningfully interfere with [the defendant's] possessory interests" because the defendant was in jail at the time the seizure occurred).

Here, Schaffer *never* asked for the return of his property.  Even after he was indicted on federal charges, he failed to file a motion for the return of his property under Fed. R. Crim. P. 41(g).  Thus, "the government is entitled to assume under long-standing Supreme Court teachings that any Fourth Amendment interest in the . . . continued possession [of the computer] had been voluntarily relinquished." *Christie*, 717 F.3d at 1163.  Moreover, Schaffer was arrested and incarcerated on the very same day that his electronic devices were seized pursuant to the June 2012 Warrant.  He has been incarcerated ever since.  His possessory interest in the electronic devices is therefore nonexistent.

Compared to defendant's nonexistent property interest and lack of concern in the return of his electronic devices, law enforcement maintained a substantial interest in retaining the electronic media until it could be forensically searched to determine if it contained evidence of the crimes it was investigating.  *See generally United States v. Moore*, 916 F.2d 1131, 1139 (6th Cir. 1990) ("The Government maintains an extremely important interest in preventing the spread of child pornography and child sexual abuse.").  The Brooklyn Victim observed Schaffer using video cameras, smart cards, and computers while he was in the process of sexually assaulting her.  Law enforcement's search of those electronic devices was critical to ensure the

safety and welfare of the Brooklyn Victim and any other past or future victims of Schaffer.  Indeed, the evidence of Schaffer's sexual abuse of the two New Jersey child victims here would likely never have been found had law enforcement not searched Schaffer's electronic devices.  Moreover, all of Schaffer's victims had an interest in seeing their rights vindicated by a criminal prosecution of Schaffer for his child-pornography and sexual-assault crimes.

Because of the Government's strong interest in pursuing its investigation into Schaffer's child-pornography crimes, the relatively short period of time between executing the search warrant of his office on June 3, 2012 and obtaining and executing the search warrant for Schaffer's electronic devices on July 31, 2012 was entirely reasonable.  The investigation in June and July 2012 involved two districts (New Jersey and the Eastern District of New York), numerous victims and witnesses from different states, and multiple law enforcement agencies (both local and federal).  The agents who seized Schaffer's electronic devices had to collect and process the 12 electronic devices that they seized on June 3, 2012.  They then had to identify a forensic expert capable of processing, handling, and analyzing the 12 electronic devices—any or all of which could have contained highly sensitive evidence of child-pornography crimes against multiple child victims.  That process led HSI agents to an agent from another federal agency, namely Special Agent John Simonello of the U.S. Secret Service, who possessed the requisite qualifications, training, and experience to conduct the sensitive forensic examination.  Once agents from HSI securely transported the electronic devices to Special Agent Simonello at

his laboratory on Long Island, New York, they obtained a search warrant on July 31, 2012, which they promptly faxed to Simonello.  Simonello then began his forensic analysis on the very same day.  Law enforcement thus acted diligently and wasted little time in searching Schaffer's electronic devices.  *See Stabile*, 633 F.3d at 236 (three-month delay between seizing hard drives and obtaining a search warrant was reasonable); *Christie*, 717 F.3d at 1162-64 (five-month delay between obtaining consent to seize the computer and obtaining a search warrant was reasonable); *United States v. Laist*, 702 F.3d 608, 616 (11th Cir. 2012) (twenty-five-day delay in obtaining a warrant to search the defendant's computer was reasonable); *United States v. Vallimont*, 378 Fed. Appx. 972, 976 (11th Cir. 2010) (forty-five-day delay reasonable).

In sum, law enforcement continued to have a compelling interest in investigating Schaffer's electronic devices for evidence of child-pornography crimes until they could be forensically examined, which far outweighed defendant's diminished possessory rights.  Thus, even if purported delays in obtaining the July 2012 Warrant were relevant here in evaluating its validity, the amount of time it took to obtain and execute the warrant did not render the search of defendant's electronic media unreasonable because of defendant's complete lack of interest in obtaining the return of his property.

**D.    Law enforcement acted in good faith when it executed the July 2012 Warrant.**

Even assuming that the July 2012 Warrant was not valid, the fruits of the search should not be excluded because law enforcement officers acted in good-faith reliance on the July 2012 Warrant.  Therefore, the good-faith exception to the exclusionary rule applies.

The July 2012 Warrant was issued by a neutral and detached judge, and the case agent's reliance on the approved warrant was objectively reasonable. Thus, evidence obtained based on the search warrant is not subject to the exclusionary rule.  *See United States v. Leon*, 468 U.S. 897, 913-21 (1984) (holding that evidence obtained from objectively reasonable reliance on a warrant issued by a detached and neutral magistrate could not be suppressed). Explaining *Leon*, the Third Circuit has held that suppression of evidence is "'inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority.'"  *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (quoting *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993)).

This Circuit has identified four "rare circumstances" in which an officer's reliance on a search warrant would not be reasonable.  *United States v. Pavulak,* 700 F.3d 651, 663-64 (3d Cir. 2012); *Hodge*, 246 F.3d at 308.  These include:

> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;

> (2) [when] the magistrate [judge] abandoned his or her judicial role and failed to perform his or her neutral and detached function;

24

(3) [when] the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or

(4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Hodge*, 246 F.3d at 308.

None of these exceptions apply here.  Other than a conclusory assertion that law enforcement lacked good faith, the defendant does not present any colorable claim that any of these four circumstances applies here.  The July 2012 Warrant, which contained detailed information supplied by various witnesses and corroborating information, cannot be said to have been so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable or facially deficient.  There is also no indication whatsoever that the judge who authorized the July 2012 Warrant abandoned her judicial role or relied on a deliberately or recklessly false affidavit.  Thus, even if the July 2012 Warrant somehow were deemed to be invalid based on any of defendant's arguments, the exclusionary rule does not apply and the evidence seized in reliance on it should not be suppressed.

## II.   DEFENDANT'S REQUEST FOR A HEARING TO DETERMINE WHETHER SCHAFFER'S STATEMENTS SHOULD BE SUPPRESSED SHOULD BE DENIED AS MOOT

Although the Government disagrees that Schaffer was in custody when he was voluntarily speaking with law enforcement agents during the search of his office on June 3, 2012, defendant's request for a hearing on whether his statements should be suppressed should be denied as moot because the

Government does not intend to introduce any statements made by Schaffer during the interview during its case-in-chief at trial.

The Government, however, reserves its right to revisit this issue should it decide to introduce Schaffer's statements either in its case-in-chief or on cross-examination of Schaffer should he testify in his own defense.

## III.   DEFENDANT'S *IN LIMINE* AND DISCOVERY-RELATED MOTIONS

### A.   Defendant's request for a preliminary hearing regarding the admissibility of prior crimes, wrongs, or other acts evidence is acceptable to the Government.

As the Government explains in its Motions *in Limine*, filed contemporaneously with this opposition brief, the Government intends, pursuant to Federal Rules of Evidence 413 and 414, to use the following prior bad acts and crimes of Schaffer in its case-in-chief at trial: (1) Schaffer's prior instances of uncharged and unrecorded sexual abuse of the two New Jersey victims; and (2) Schaffer's conviction in the Eastern District of New York for his sexual abuse of the Brooklyn Victim and the circumstances that led to that conviction.

The Government welcomes a hearing with the Court on the admissibility of these prior bad acts and crimes under Rules 413 and 414.

### B.   If the defendant testifies, the Government intends to impeach him with evidence of his prior convictions in the Eastern District of New York for his sexual assault of the Brooklyn Victim.

Defendant requests notice by the Government in the event that the Government intends to impeach defendant with evidence of any prior convictions.  Def.'s Mot. to Suppress at 14-15.  If the defendant testifies in his

26

own defense at trial, the Government intends to impeach him with evidence of his prior conviction in the Eastern District of New York for coercing and enticing a minor to travel in interstate commerce to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(a); coercing and enticing a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b); and attempting to commit both of those offenses.  The Court should admit such impeachment evidence for the reasons that follow.

Federal Rule of Evidence 609(a)(1)(B) provides that, when a witness was convicted of a crime punishable by more than one year in the convicting jurisdiction, the criminal conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant."

Here, Schaffer was convicted in the Eastern District of New York of four crimes relating to his enticement and subsequent sexual assault of the Brooklyn Victim, all of which were punishable by more than one year. Therefore, the evidence must be admitted so long as its probative value outweighs its prejudicial effect.

To balance the probative value of the evidence versus its prejudicial effect, courts should use the following four factors: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the defendant's testimony to the case; and (4) the importance of the credibility of the defendant."  *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014) (citing *Gov't of V.I. v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982)).

27

Regarding the first factor—"the kind of crime involved"—"courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime." *See Caldwell*, 760 F.3d at 286. "The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness." *Id.* (citation omitted). "[C]rimes that by their nature imply some dishonesty . . . have greater impeachment value and are significantly more likely to be admissible." *Id.* (citation omitted).

The probative value of Schaffer's conviction in the Eastern District of New York to his character for truthfulness is very high. His conviction for enticement of a minor across state lines so he could sexually assault her involved staggering deceit and untruthfulness. Schaffer repeatedly lied to the Brooklyn Victim on email and in person about various jobs he was interviewing her for and about his true identity, even using a false name. Schaffer went so far as to have the Brooklyn Victim sign sham "sex" and "confidentiality" contracts and then threatened to sue her or her loved ones for breaking them if she did not comply with his sexual demands. Even after he had sexually assaulted her, Schaffer continued to communicate with the Brooklyn Victim (or law enforcement consensually impersonating her) about the fabricated job offer. The highly dishonest nature of Schaffer's prior crime thus weighs strongly in favor of permitting the Government to impeach Schaffer with his prior conviction. *See United States v. Wilson*, 2016 WL 2996900, No. 15-cr-94, *3 (D.N.J. May 23, 2016) (admitting a prior conviction for receiving stolen property because it "implies dishonesty").

The other prong of the "kind of crime involved" is the similarity of the crime to the offense charged.  The Third Circuit in *Caldwell* cautioned that "the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried" because it increases the risk that the jury will draw an impermissible propensity inference under Rule 404.  *Id.*  This factor, however, is irrelevant here if the Court allows the Government to admit substantive evidence of Schaffer's conviction from the Eastern District of New York under Rules 413 and 414, which are express exceptions to the limitations on propensity evidence of Rule 404(b).[5]  140 Cong. Rec. H8991-92 (1994) (remarks of principal House sponsor, Rep. Molinari) (noting that both Rules 413 and 414 are designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)").  If the Court permits the Government to introduce Schaffer's prior conviction as substantive evidence in the Government's case-in-chief, then there is no additional danger posed by the Government using that same conviction to impeach Schaffer's character for truthfulness should he testify in his own defense.

The second factor in the balancing analysis is the "age of the prior conviction."  *Caldwell*, 760 F.3d at 287.  The older the conviction, the lesser its probative value, especially if combined with evidence of the defendant's

---

[5] The Court can find the Government's arguments for admitting evidence of Schaffer's July 2014 conviction in the Eastern District of New York at pages 11-25 of the Government's Motions *in Limine*, filed contemporaneously with this opposition brief.

29

changed character.  *See id.*  Here, however, Schaffer's conviction occurred very recently—July 2014—and he has proffered no evidence whatsoever that he is a changed person.  This factor therefore favors admission.  *See Wilson*, 2016 WL 2996900 at *3 (admitting prior conviction over 10 years old because evidence suggested defendant's character had not improved); *United States v. Figueroa*, 2016 WL 126369, Crim. No. 15-0098, *3 (D.N.J. Jan. 11, 2016) (admitting four-year-old conviction because "defendant is not being tarred with old matters that no longer fairly represent his character").

The third factor is the importance of the defendant's testimony to the case.  "The tactical need for the accused to testify on his or her own behalf may militate against use of impeaching convictions.  If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying."  *Caldwell*, 760 F.3d at 287. (quoting Glenn Weissenberger & James J. Duane, Weissenberger's Federal Evidence § 609.2 (4th ed. 2001)).  However, if "the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted."  *Id.* at 288 (quoting Weinstein's Federal Evidence § 609.05[3][e]); *see also United States v. Causey*, 9 F.3d 1341, 1344 (7th Cir. 1993) (noting the prejudicial impact diminished where defendant "did not obviously need to testify to raise his various defenses" because several other defense witnesses provided the same testimony).

Here, the Government anticipates that one of Schaffer's central defenses at trial will be that his computer was tampered with, such that he did not know of the child pornography discovered on it. Defense counsel has indicated it may call a forensic expert to testify in support of this theory. It would therefore appear that Schaffer's testimony to the same effect would be duplicative and thus unnecessary to his defense. This factor thus also militates in favor of admission.

The fourth and final factor concerns the significance of the defendant's credibility to the case. *Caldwell*, 760 F.3d at 288. "When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." *Id.* (quoting Weinstein's Federal Evidence § 609.05 [3][f]); *see United States v. Johnson*, 302 F.3d 139, 153 (3d Cir. 2002) (affirming admission of prior conviction under Rule 609(a) because the defendant's credibility was important). If Schaffer testifies that his computer was tampered with and he thus never intended to possess child pornography, his credibility could be critical to the case notwithstanding that it could duplicate other defense testimony, as described above. Aside from two forensic experts, the jury will hear from only one lay witness—Schaffer—that he did not intend to possess the child pornography found on his computer. Whether the jury believes Schaffer's testimony could therefore be crucial to its verdict on the possession-of-child-pornography charge (Count Three in the Indictment).

31

In sum, because all the factors favor admission of Schaffer's prior conviction to impeach his testimony, its probative value far outweighs its prejudicial effect, and it should be admitted.

### C.   The Government has complied with its *Brady* obligations and will continue to do so.

Defendant requests that the Government timely disclose all exculpatory evidence in its possession under *Brady v. Maryland*, 373 U.S. 83 (1963).  Def.'s Mot. to Suppress at 15-17.

The Government does not dispute that it must disclose any exculpatory evidence in its possession under *Brady*.  The Government has fully complied with its obligations thus far and will continue to do so should any exculpatory material come into its possession.

### D.   The Government has complied with its *Giglio* obligations and will continue to do so.

Defendant also seeks immediate disclosure of any impeachment material of all agents and law enforcement personnel pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny.  Def.'s Mot. to Suppress at 18.  *Giglio* requires the government to disclose evidence that goes to the credibility of crucial prosecution witnesses.  *Buehl v. Vaughn*, 166 F.3d 163, 181 (3d Cir. 1999).  This information typically includes, for example, immunity agreements, plea agreements, money paid to a witness, and prior criminal convictions.

The Government is well aware of its obligation to disclose, at the appropriate time, any *Giglio* information.  The Government will voluntarily

disclose all *Giglio* material no later than one week before trial, which will ensure that defendant's due process rights to a fair and just trial are satisfied. *See*, *e.g.*, *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983); *United States v. Bissell*, 954 F. Supp. 841, 869-71 (D.N.J. 1996). Accordingly, no additional order compelling disclosure is necessary.

Defendant also requests that the Government review the personnel files of law enforcement officers who participated in the case and disclose any information that might be helpful to the defense. Def.'s Mot. to Suppress at 18. Defendant is not entitled to this information under Rule 16 of the Federal Rules of Criminal Procedure, nor does *Giglio* require the disclosure of such information. *Giglio* requires disclosure of impeachment information relating to the Government's key prosecution witnesses, not every law enforcement officer who participated in the case. Defendant is seeking disclosure of impeachment evidence for all possible law enforcement officers, which is far beyond the Government's obligation because the Government does not intend to call every law enforcement officer as a witness at trial. Courts have long held that the government only needs to disclose impeachment evidence for the government's own witnesses. *See Buehl*, 166 F.3d at 181 ("The prosecution must also disclose evidence that goes to the credibility of crucial prosecution witnesses.") (citing *Giglio*, 405 U.S. at 154); *see also United States v. Miller*, No. 15-202, 2016 WL 1408102, at *4 (D.N.J. Apr. 11, 2016) (finding that defendant's request for impeachment evidence for all agents and law enforcement witnesses overstated "the extent of the government's *Giglio* obligations"); *United States v.*

33

*Serran*o, No. 09-913, 2012 WL 6561556, at *3 (D.N.J. Dec. 4, 2012)

(unpublished) (finding that the government was obligated to produce *Giglio*

information for those witnesses it intended to call).

### E. The Court should deny the defendant's request for early production of *Jencks* materials.

Defendant seeks early production of *Jencks* material.  *See* Def.'s Mot. to

Suppress at 17-18.  This request should be denied.  The *Jencks* Act, which was

adopted to set limits on pretrial discovery of statements in criminal cases,

provides that: "In any criminal prosecution brought by the United States, no

statement or report in the possession of the United States which was made by

a United States witness . . . shall be the subject of subpoena, discovery, or

inspection until said witness has testified on direct examination in the trial of

the case." 18 U.S.C. § 3500(a).  Thus, disclosure of a government witness's

prior statements or reports is not required until after the witness has testified.

The *Jencks* Act reflects a legislative determination that a criminal

defendant is entitled to use prior statements for impeachment purposes in

cross-examination, not as a discovery tool for trial preparation.  *See Palermo v.

United States*, 360 U.S. 343, 349 (1959).  The Jencks Act is not a discovery

vehicle, which is why the Third Circuit has repeatedly held that a district court

cannot compel the government to disclose statements of its witnesses before

the conclusion of the witness's direct examination.  *See Higg*s, 713 F.2d at 44-

45; *United States v. Scolnick*, 392 F.2d 320, 327 (3d Cir. 1968).

The Government, however, recognizes that "early disclosure to obviate trial interruptions is encouraged." *United States v. Bissell*, 954 F. Supp. 841, 871 (D.N.J. Dec. 13, 1996) (citing *United States v. Hill*, 976 F.2d 132, 140 (3d Cir. 1992).  Accordingly, the Government will voluntarily produce *Jencks* material at least a week prior to the testimony of each Government witness. This early disclosure will afford defense counsel an adequate opportunity to prepare for cross-examination without delaying the trial.

Defendant has a reciprocal duty to produce to the Government prior statements of his witnesses.  *See* Fed. R. Crim. P. 26.2.  In light of the Government's willingness to produce *Jencks* material a week before the testimony of its witnesses, the Government requests that defense counsel reciprocate by providing defense *Jencks* material at least one week in advance of the testimony of defense witnesses. If defendant declines to use the same timetable for his required disclosures, the Government expects that defendant will notify the Government and the Court at least one week prior to the beginning of trial, so the Government can reconsider its offer of voluntary early disclosure of *Jencks* material.

Defendant also appears to seek a Court order compelling the Government to produce all rough notes of agent interviews.  *See* Def.'s Mot. to Suppress at 17-18.  The Government is not, however, required to disclose rough notes and/or draft reports prepared by law enforcement officers merely because defendant has demanded them.  *See United States v. Brown*, 303 F.3d 582, 590 (5th Cir. 2002); *United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997).

35

Accordingly, the Government objects to defendant's motion for an order compelling the Government to produce all rough notes and draft reports. Nevertheless, the Government will produce any rough notes and drafts in accordance with the Government's *Jenks* obligations.

The officers and agents involved in the prosecution of this case have been advised of their obligation to preserve notes of interviews and handwritten drafts of reports. If directed by the Court to do so, the Government will submit those materials to the Court for in camera review to determine whether disclosure is warranted. *See United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983) ("[T]he government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced."); *United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977) (FBI agent's rough notes should be kept so that the trial court can determine whether they contain *Brady* or *Jencks* Act materials).

### F. Defendant will be provided with the required reports and curriculum vitae regarding the Government's expert witnesses well in advance of trial.

Defendant seeks disclosure of any expert reports and summaries of expert testimony that the Government intends to introduce through any expert witness. *See* Def.'s Mot. to Suppress at 19.

By letter dated January 25, 2017, the Government disclosed to defendant that the Government intends to present expert testimony of Special Agent John Simonello of the United States Secret Service concerning his

36

forensic examination of defendant's computer and other electronic devices. The Government also disclosed Special Agent Simonello's curriculum vitae. Thus, defendant's motion for such disclosure is moot and should be denied.

Should the Government identify any additional expert witness that it intends to call, it will promptly notify the defendant and disclose summaries of each witness's testimony and his/her curriculum vitae.

### G.  The Government does not object to defendant's request to file additional motions where appropriate.

Defendant has moved for permission to file unspecified pretrial motions in the future.  *See* Def.'s Mot. to Suppress at 19.  Circumstances may arise that would make it appropriate and necessary for additional motions to be filed by both the defense and the Government.  Thus, the Government does not object to this request at this time, provided that the defendant requests prior permission from the Court before filing any additional pretrial motions, and that the Government be granted the same opportunity, if necessary.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that each of defendant's pretrial motions to suppress evidence should be denied.  In addition, the Government welcomes a hearing to discuss the admissibility of Schaffer's prior conviction in the Eastern District of New York, both as substantive and impeachment evidence.  Finally, the Government understands its obligations concerning *Brady*, *Giglio*, *Jencks*, and expert disclosures and will continue to comply with them, so defendant's motions on those subjects should be denied.

Respectfully submitted,

PAUL FISHMAN
United States Attorney

By:   /s/ Jason S. Gould
Jason S. Gould
Meredith J. Williams
Assistant United States Attorneys

Dated: January 27, 2017
Newark, New Jersey

cc:   Patrick McMahon, Esq.
Leticia Olivera, Esq.

38