UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Hon. Jose L. Linares |
| v. | : | |
| | : | Criminal No. 13-183 |
| GREGORY SCHAFFER | : | |

---

MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTIONS *IN LIMINE*

---

PAUL J. FISHMAN
UNITED STATES ATTORNEY
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

JASON S. GOULD
MEREDITH J. WILLIAMS
Assistant U.S. Attorneys

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................ 1

STATEMENT OF FACTS ................................................................. 2

    The New Jersey Child Victims ................................................... 3

        *Child Victim 1* ............................................................ 3

        *Child Victim 2* ............................................................ 4

        *Other Sexual Abuse of the New Jersey Child Victims* ..................... 6

    The Brooklyn Victim ............................................................. 7

ARGUMENT ............................................................................... 11

I.     EVIDENCE OF SCHAFFER'S PRIOR SEXUAL ABUSE OF THE NEW JERSEY CHILD VICTIMS AND HIS 2014 CONVICTION FOR SEXUAL ASSAULT OF THE BROOKLYN VICTIM IS ADMISSIBLE AT TRIAL UNDER FEDERAL RULES OF EVIDENCE 413 AND 414 ...................... 11

    A.    Legal Standards for Federal Rules of Evidence 413 and 414 ....... 11

        1.    Legislative History of Rules 413 and 414 ........................... 12

        2.    Third Circuit Standards for Admission of Evidence Under Rules 413 and 414 ................................................... 14

    B.    Evidence of the Defendant's Prior Instances of Child Molestation of the New Jersey Child Victims is Admissible under Federal Rule of Evidence 414 .......................................... 16

        1.    The Defendant is charged with "child molestation" under Rule 414. .............................................................. 17

        2.    The Defendant's prior sexual abuse of the New Jersey Child Victims were acts of "child molestation." ................. 17

        3.    The evidence not more prejudicial than probative. ............. 18

C.   Evidence of the Defendant's 2014 Conviction for Enticing the
     Brooklyn Victim to New Jersey to Engage in Illegal Sexual
     Activity is Admissible under Federal Rule of Evidence 413. ......... 20

     1.   The Defendant is charged here with a "sexual assault"
          for purposes of Rule 413. ................................................. 21

     2.   The Defendant's conviction for enticement of the
          Brooklyn Victim to engage in illegal sexual activity
          was a "sexual assault." ..................................................... 22

     3.   The evidence is not more prejudicial than probative. ......... 23

II.  THE GOVERNMENT'S FORENSIC EXPERT SHOULD BE PERMITTED TO
     SLOW TO A NORMAL SPEED THE VIDEO RECORDING OF SCHAFFER'S
     SEXUAL ABUSE OF CHILD VICTIM 1 TO AID THE JURY'S
     OBSERVATION OF THE EVIDENCE .................................................... 25

CONCLUSION ................................................. 29

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Johnson v. Elk Lake Sch. Dist.*,
   283 F.3d 138 (3d Cir. 2002) ............................................................... passim

*United States v. Beeler*,
   62 F.Supp.2d 136 (D. Me. 1999) ................................................................. 27

*United States v. Blazek*,
   431 F.3d 1104 (8th Cir. 2005) .................................................................... 22

*United States v. Erramilli*,
   788 F.3d 723 (7th Cir. 2015) ..................................................................... 14

*United States v. Guardia*,
   135 F.3d 1326 (10th Cir. 1998) .................................................................. 16

*United States v. Hitt*,
   473 F.3d 146 (5th Cir. 2006) ..................................................................... 22

*United States v. Kelly*,
   510 F.3d 433 (4th Cir. 2007) ..................................................................... 14

*United States v. Merz*,
   396 Fed. Appx. 838 (3d Cir. 2010) ...................................................... passim

*United States v. O'Connor*,
   650 F.3d 839 (2d Cir. 2011) ...................................................................... 14

*United States v. Plato*,
   629 F.3d 646 (7th Cir. 2010) .................................................................. 26-27

*United States v. Prawdzik*,
   2008 WL 3983811(E.D. Pa. 2008)..............................................14, 15, 16, 17

*United States v. Redlightning*,
   624 F.3d 1090 (9th Cir. 2010) ................................................................... 14

*United States v. Rogers*,
   587 F.3d 816 (7th Cir. 2009) ............................................................... 21, 22

*United States v. Schaffer*,
   2014 WL 1515799 (E.D.N.Y. 2014) ................................................ 10, 18, 24

*United States v. Seifert,*
    445 F.3d 1043 (8th Cir. 2006) ...................................................... 26, 27, 28

*United States v. Seymour,*
    468 F.3d 378 (6th Cir. 2006) ...................................................... 14

*United States v. Strong,*
    826 F.3d 1109 (8th Cir. 2016) .................................................... 14

*United States v. Woods,*
    684 F.3d 1045 (11th Cir. 2012) .................................................. 14

**Statutes**

18 U.S.C. chapter 110 ................................................................... 12

18 U.S.C. § 2422 .................................................................... 9, 22

18 U.S.C. § 2251(a) ..................................................................... 1, 17

18 U.S.C. § 2252A(a)(5)(B) ............................................................... 1

**Federal Rules**

Fed. R. Evid. 413 ................................................................. passim

Fed. R. Evid. 414 ................................................................. passim

**Others**

VIOLENT CRIME CONTROL AND LAW ENFORCEMENT ACT OF 1994,
Pub. L. No. 103–322, 108 Stat 1796 ............................................. 12

EVIDENCE OF PROPENSITY AND PROBABILITY IN SEX OFFENSE CASES
AND OTHER CASES, 70 Chi.-Kent Law Review 15 (1994) ........................ 12, 13

Defendant Gregory Schaffer was indicted on March 13, 2013 by a federal grand jury in Newark, New Jersey of two counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2, and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2.  Trial on these charges is scheduled to begin on March 1, 2017.

## INTRODUCTION

The government respectfully submits this memorandum in support of its motions *in limine* to admit evidence of: (1) the defendant's prior instances of sexual abuse of two minor girls from New Jersey ("Child Victim 1" and "Child Victim 2," respectively, and collectively, the "New Jersey Child Victims"), which was not recorded or photographed and is different from the sexual abuse depicted in the recorded videotaped images that form the basis of the instant indictment; (2) the defendant's 2014 conviction in the Eastern District of New York for enticement and sexual assault of a 15-year-old girl from Brooklyn, New York (the "Brooklyn Victim"); and (3) an edited version of the video produced by defendant depicting defendant's sexual abuse of Child Victim 1.

As set forth in greater detail below, the evidence of defendant's prior instances of sexual abuse of both the New Jersey Child Victims and the Brooklyn Victim are presumptively admissible under Federal Rules of Evidence 413 and 414 because the prior conduct can be established with specificity and is substantially similar to the illegal sexual conduct that the defendant is charged with in this case.  Moreover, the evidence is strongly probative of the defendant's access and sexual attraction to the New Jersey Child Victims,

along with his general sexual attraction to children.  The prior conduct is also admissible because it is evidence of his modus operandi—that is, his pattern of sexually abusing children by first making them try on bathing suits and then "adjusting" the bathing suits as an excuse to grope them.  Finally, the evidence it is not more prejudicial than probative.  The Government therefore respectfully requests that the Court enter an order admitting evidence of the defendant's prior conduct with the New Jersey Child Victims and his prior conviction for his sexual abuse of the Brooklyn Victim.

Additionally, the Government should be permitted to offer into evidence an edited version of the video recording of defendant's sexual abuse of Child Victim 1.  As described below, the original video recording, as stored on a laptop computer recovered from defendant's office, progresses at a rapid speed that makes observing and viewing what is happening in the video difficult.  The government proposes to edit this video so that it plays at normal speed at trial, aiding the jury's understanding of the events depicted in the video.  The video will not be altered in any other way, and its content, aside from the speed, will be accurate, authentic, and trustworthy.

## STATEMENT OF FACTS

At trial, the government anticipates that it will introduce evidence demonstrating the following facts:

On June 3, 2012, law enforcement officers conducted a lawful search of the office of defendant Gregory Schaffer at his business premises in Jersey City, New Jersey.  The search arose from a child sex-abuse investigation being

conducted by agents of Homeland Security Investigations ("HSI") and local law enforcement, who were investigating allegations that Schaffer had enticed the Brooklyn Victim—then a 15-year-old girl—to travel from Brooklyn, New York to his office in New Jersey to engage in illegal sexual activity.  Those allegations are described in more detail below at pages 7-10.

When law enforcement searched Schaffer's office, they discovered, among other things, a computer, a camcorder, and a number of electronic storage devices.  Agents subsequently obtained a search warrant for those devices, and they uncovered approximately 100 images of child pornography, including videos and still images.  The videos include five showing Schaffer with the New Jersey Child Victims engaging in illegal sexual activity, and there are several videos of Schaffer with the Brooklyn Victim immediately before he sexually assaulted her.  The still images depict prepubescent girls engaged in various sexual acts, often with adult men.

**The New Jersey Child Victims**

### *Child Victim 1*

In the first video, Schaffer and Child Victim 1 were depicted in Schaffer's Jersey City, New Jersey business premises, which was purportedly for his tow-truck business.  Schaffer isolated Child Victim 1 by sending his wife, Child Victim 1's mother, and Child Victim 1's minor sister out for coffee.  Child Victim 1 is approximately 12 years old in the video.

In the video, Schaffer directed Child Victim 1 to try on several different bathing suits, which Child Victim 1 did in his presence.  Schaffer then

3

"adjusted" the bathing suits on Child Victim 1's body and fondled her breasts and genital area in the process.  At one point, Child Victim 1 sat on Schaffer's lap with his arm around her.  Schaffer had Child Victim 1 begin to masturbate him.  Child Victim 1 eventually performed oral sex on Schaffer in the video.

In a second video, which is a continuation of the first, Schaffer continued to fondle Child Victim 1.  Eventually, Child Victim 1 got naked, and Schaffer had her lie on her back.  With his back to the camera, Schaffer either had sexual intercourse with Child Victim 1 or masturbated on top of her.  After a few minutes, Schaffer appeared to ejaculate on Child Victim 1, and then he handed her a rag to clean herself.  At one point in the video, Child Victim 1 can be seen crying.  Before the video ends, Child Victim 1 got dressed, and, soon after, Schaffer's wife and Child Victim 1's mother and sister entered the office.

Both videos were edited such that they progress at a rapid speed (approximately four to five times normal speed) and have no audible sound.[1] Each video was approximately six minutes long.  For his involvement in the production and possession of the videos of Child Victim 1, Schaffer was charged in Count Ones and Three of the Indictment.

### Child Victim 2

The third, fourth, and fifth videos recovered during the search of the defendant's business premises depict Schaffer with a second minor girl, Child

---

[1] As set forth below at pages 25-28, the Government respectfully requests permission to slow the speed of (but not substantively change) the videos of Schaffer's sexual abuse of Child Victim 1 so that the jury may observe defendant's conduct in normal speed.

Victim 2, who was approximately 14 at the time the videos were produced. In the videos, which contain audible sound, Schaffer and Child Victim 2 are alone in a hotel room. Schaffer had isolated Child Victim 2 by bringing a group of adults and children to the hotel and then directing everyone but Child Victim 2 to use the hotel's indoor swimming pool.

In the video, Schaffer directed her to try on several different bathing suits. At least twice during the videos, Schaffer went into the bathroom with Child Victim 2 and closed the door while the camera continued to record. It cannot be determined what transpired in the bathroom because the recording did not capture video or audio from the bathroom.

Eventually, Child Victim 2 sat naked on the hotel-room bed. Both her breasts and vagina were clearly visible. Schaffer was sitting next to her on the bed—first fully clothed and later only in shorts. A Dora the Explorer backpack can be seen in the background on the bed. Schaffer falsely told Child Victim 2 that he was an FBI agent and that he used to be a Navy Seal. He offered Child Victim 2 courtside Knicks basketball tickets for her and her father, and told her that he planned to give her a laptop computer.

Later in the video, Child Victim 2 can once again be seen wearing a bathing suit when Schaffer pulled her onto his lap on the bed and forced her arm around him. At one point in the video, Schaffer's back appeared on the video when he was apparently showing Child Victim 2 his penis. Schaffer asked Child Victim 2 a series of questions related to her knowledge of and

5

experiences with sex.  Eventually, Schaffer touched Child Victim 2's bare inner thigh, and her genitals and breasts over her bathing suit.

Shortly before Child Victim 2 left the room, Schaffer instructed her not to tell anyone what happened in the hotel room.  Child Victim 2 eventually got dressed and left the hotel room.  A few minutes later, Schaffer's wife entered the hotel room.  The two videos together depicting Child Victim 2 are approximately 87 minutes long.  For his role in the production and possession of the videos of Child Victim 2, the defendant was charged in Counts Two and Three of the Indictment.

### *Other Sexual Abuse of the New Jersey Child Victims*

After law enforcement discovered the videos depicting Schaffer's sexual abuse of the New Jersey Child Victims, law enforcement agents located and interviewed them.  Not only did the New Jersey Child Victims confirm the sexual abuse they suffered in the videos described above, which constitute the substantive crimes charged in Counts One, Two, and Three of the Indictment, but both victims described other uncharged instances of sexual abuse by Schaffer.

Child Victim 1, for example, told law enforcement that Schaffer once lured her from her home by promising to take her to GameStop, a local video game store.  Instead of bringing her to the store, however, Schaffer took Child Victim 1 by herself to a hotel room where he showed her pictures of other girls in bathing suits on his laptop computer.  He then had Child Victim 1 change into bathing suits.  According to Child Victim 1, Schaffer removed his jacket

and his pants, and he forced her to touch his penis with her hand and to perform oral sex on him.  Schaffer also touched Child Victim 1's vagina.  Child Victim 1 estimated that she was approximately 12 years old during this incident.  Child Victim 1 estimated that Schaffer sexually abused and assaulted her approximately 20 to 30 times when she was 12 or 13.

As another example, Child Victim 2 told law enforcement about a sexual-abuse incident involving both her and Child Victim 1 that took place at Schaffer's residence.  Schaffer had them both try on bathing suits.  He then locked both Child Victim 1 and Child Victim 2 in the bathroom, pointed to a bundle of road flares, and told them it was "dynamite" that would "explode" if they opened the bathroom door or screamed.  Once the child victims "correctly guessed" the code to "disarm" the "explosives," Schaffer made them both touch his penis.  Child Victim 2 estimated that she was 14 years old at the time, which would make Child Victim 1 approximately 12 years old.

**The Brooklyn Victim**

The following facts were testified to during Schaffer's trial in the Eastern District of New York in July 2014:

In late February or early March 2012, the Brooklyn Victim posted an ad on Craigslist indicating that she was looking for a job.  She quickly received a response from "John Archambeault," later identified as the defendant Gregory Schaffer, stating falsely that he was searching for part-time help at a store he owned in a mall in Jersey City, New Jersey.  They agreed to meet to further

7

discuss the Brooklyn Victim's potential employment for Schaffer.  The Brooklyn Victim told Schaffer that she was 15 years old.

On or about March 17, 2012, the Brooklyn Victim traveled from Brooklyn to Schaffer's business premises in Jersey City, New Jersey.  She was accompanied by a friend, who was also a minor.  Schaffer took the Brooklyn Victim into his office alone, while her friend waited outside, and asked her whether she was sexually active and whether she used drugs.  He gave her paperwork for her guardian, her grandmother, to sign.  Schaffer told her to come back to his office in New Jersey the following day—alone because it might be her first day of work.

The next day, on or about March 18, 2012, the Brooklyn Victim traveled back to Schaffer's office in Jersey City.  She was alone.  Schaffer asked her to sign two contracts—an "employment" contract and a "confidentiality" agreement—which she signed but did not review carefully.

After she signed both documents, Schaffer told her that by signing them, she had agreed to have sex with him.  Schaffer then had the Brooklyn Victim try on several bathing suits, and took pictures and video of the Brooklyn Victim in the bathing suits.  Later, Schaffer removed his pants, revealing that he was wearing a Speedo bathing suit.  When the Brooklyn Victim told Schaffer that she was uncomfortable, he threatened to report the Brooklyn Victim's boyfriend, who was 17, for having sex if she broke the contract.  He also threatened to sue the Brooklyn Victim's grandmother for breach of contract.

8

After having the Brooklyn Victim lie on his desk, Schaffer took a white pill and inserted it into her vagina, telling her it was "birth control."  The Brooklyn Victim asked Schaffer to use a condom, which he took from the drawer in his desk and put on.  Schaffer then had nonconsensual sexual intercourse with the Brooklyn Victim.  During the sexual assault, the Brooklyn Victim tried to reach for her cell phone several times, but Schaffer blocked her hand.

Afterward, the Brooklyn Victim notified law enforcement, who investigated her allegations against Schaffer.  As discussed above at page 3, during the execution of the June 3, 2012 search warrant, HSI agents seized numerous sexual devices, digital devices, and documents from the defendant's office.  Law enforcement agents reviewed the digital devices and found videos depicting the Brooklyn Victim changing into bathing suits, and the defendant "adjusting" the bathing suits so Schaffer could fondle the Brooklyn Victim's breasts and groin.  They do not show Schaffer's sexual assault of the Brooklyn Victim.

Schaffer was indicted by a federal grand jury in the Eastern District of New York on July 2, 2012 on the following four charges arising from his illegal sexual assault of the Brooklyn Victim: coercing and enticing a minor to travel in interstate commerce to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(a); coercing and enticing a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b); and attempting to commit both of those offenses.

9

Before trial in the Eastern District of New York, the government moved *in limine* to admit, among other things, the videos of Schaffer's production of child pornography of the New Jersey Child Victims—two instances of conduct not charged in that case (but charged here).  The government there argued that evidence of Schaffer's prior sexual misconduct toward children was presumptively admissible because it was relevant to establishing Schaffer's intent in enticing the Brooklyn Victim to travel to New Jersey to engage in illegal sexual conduct.  The government also contended that the probative value of the evidence was not outweighed by its prejudicial effect.  The district court agreed and admitted the videos of the New Jersey Child Victims as evidence at trial.  *See United States v. Schaffer*, 2014 WL 1515799, No. 12-cr-430, *10-11 (ARR) (E.D.N.Y. April 18, 2014).

After a trial in July 2014, a jury convicted Schaffer on all four counts with respect to his conduct with the Brooklyn Victim.  On July 24, 2015, the Honorable Judge Ross sentenced the defendant to a term of imprisonment of 25 years.

## ARGUMENT

**I. EVIDENCE OF SCHAFFER'S PRIOR SEXUAL ABUSE OF THE NEW JERSEY CHILD VICTIMS AND HIS 2014 CONVICTION FOR SEXUAL ASSAULT OF THE BROOKLYN VICTIM IS ADMISSIBLE AT TRIAL UNDER FEDERAL RULES OF EVIDENCE 413 AND 414**

### A. Legal Standards for Federal Rules of Evidence 413 and 414

In a case involving sexual abuse of children, the admissibility of a prior instance of sexual assault is governed by Rule 413 and the admissibility of a prior instance of child molestation is governed by Rule 414.

Rule 413 ("Similar Crimes in Sexual-Assault Cases") provides as follows:

> In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault.  The evidence may be considered on any matter to which it is relevant.

"Sexual assault" is defined in part as a crime under federal law involving "any conduct prohibited by 18 U.S.C. chapter 109A" or "contact, without consent, between the defendant's genitals . . . and any part of another person's body." Fed. R. Evid. 413(d)(1)&(3).

Meanwhile, Rule 414 ("Similar Crimes in Child Molestation Cases") provides as follows:

> In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

"Child" is defined under the rule as a person below the age of 14.  Fed. R. Evid. 414(d)(1).  "Child molestation" means a crime under federal or state law

11

involving, among other things, either: "any conduct prohibited by 18 U.S.C. chapter 110" or "contact between the defendant's genitals . . . and any part of a child's body."  Fed R. Evidence 414(d)(2)(B)&(D).

The principles governing admission of evidence under Rules 413 and 414 are the same.  *See Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 150-59 (3d Cir. 2002).

### 1.    Legislative History of Rules 413 and 414

Congress enacted Federal Rules of Evidence 413 and 414 as part of the Violent Crime Control and Law Enforcement Act of 1994.  Pub. L. No. 103-322, 108 Stat. 1796 (1994).  Both Rules are designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption that "evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects."  140 Cong. Rec. H8991-92 (1994) (remarks of principal House sponsor, Rep. Molinari); *see also* 140 Cong. Rec. S12990; David J. Karp, Evidence of Propensity and Probability in Sex Offense Cases and Other Cases, 70 Chi.-Kent L. Rev. 15, 19 (1994).[2]

---

[2] The principal sponsors of Rules 413 and 414 noted that an address delivered to the Evidence Section of the Association of American Law Schools by David J. Karp—then Senior Counsel at the Office of Policy Development at the Department of Justice and the drafter of Rules 413 and 414—was to serve as an "authoritative" part of the Rules' legislative history.  *See* 140 Cong. Rec. 23,602 (1994).

The legislative sponsors of Rules 413 and 414 further noted that the kind of evidence contemplated for admission by these rules was particularly relevant to child sex offense cases:

> The reform effected by these rules is critical to the protection of the public . . . [a]nd is justified by the distinctive characteristics of the cases to which it applies.  ***In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people.***

140 Cong. Rec. S12990 (emphasis added).  Furthermore, Congress recognized and intended that this approach would make the admission of similar-crimes evidence in federal sex offense cases the norm, and its exclusion the exception:

> ***The presumption is in favor of admission***. . . .  In line with this judgment, the rules do not impose arbitrary or artificial restrictions on the admissibility of evidence.  Evidence for offenses for which the defendant has ***not previously been prosecuted or convicted will be admissible, as well as evidence of prior convictions***.

140 Cong. Rec. H8992 (1994) (statements of Rep. Molinari and Sen. Dole) (emphases added); *see also* 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi.-Kent L. Rev. at 19.  The legislative sponsors noted that this evidence would be properly admitted "notwithstanding substantial lapses of time" relative to the charged offenses.  *Id.*

13

### 2.    Third Circuit Standards for Admission of Evidence Under Rules 413 and 414

Courts in the Third Circuit have favorably cited the legislative history of Rules 413 and 414 and found that "Congress intended to allow admission not only of prior convictions for sexual offenses, but also of uncharged conduct." *United States v. Prawdzik*, 2008 WL 3983811, Crim. No. 07-0040-03, *2 (E.D. Pa. Aug. 25, 2008) (citing *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 151-152 (3d Cir. 2002)).  They have also commonly admitted evidence of prior sexual assaults and child molestation.  *See United States v. Merz*, 396 Fed. Appx. 838, 843 (3d Cir. 2010) (affirming district court's admission of evidence of uncharged sexual molestation by defendant because of the similar ages of child victims, even though the prior abuse occurred 13 years before); *Prawdzik*, 2008 WL 3983811 at *3-5 (admitting evidence of uncharged sexual molestation by defendant because of its similarity to the charged conduct).[3]

---

[3] The decisions from the Third Circuit are consistent with the vast body of cases in other circuits confirming Rule 413 and Rule 414's broad principles of admissibility.  *See, e.g., United States v. O'Connor,* 650 F.3d 839, 853-54 (2d Cir. 2011) (evidence of defendant's prior sex offense properly admitted under Rule 413); *United States v. Kelly*, 510 F.3d 433, 436-38 (4th Cir. 2007) (evidence of defendant's prior attempted rape conviction of 12-year-old admitted under Rule 414); *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006) (defendant's uncharged prior sexual assaults against adult females admitted under Rule 413 in case charging child molestation offenses); *United States v. Erramilli*, 788 F.3d 723, 730 (7th Cir. 2015) (in 18 U.S.C. § 2244(b) trial, defendant's prior sexual assaults were admissible under Rule 413); *United States v. Strong*, 826 F.3d 1109, 1112-14 (8th Cir. 2016) (evidence of defendant's prior "brutal[]" sexual assault admissible under Rule 413); *United States v. Redlightning*, 624 F.3d 1090, 1119-20 (9th Cir. 2010) (upholding district court's admission of, under Rule 413, defendant's confession to committing prior sex offense); *United States v. Woods*, 684 F.3d 1045, 1064-65

14

But to ensure that the government does not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo," a district court considering evidence under Rules 413 and 414 must decide "whether a reasonable jury could find by a preponderance of the evidence that the past act" was an 'offense of sexual assault' under Rule 413(d)'s definition and that it was committed by the defendant." *Elk Lake,* 283 F.3d at 154-55.  The same analysis applies to Rule 414 in child molestation cases.  *See Prawdzik*, 2008 WL 3983811 at *3.

Then, even if the evidence is facially admissible under Rule 413 or Rule 414, it still is subject to Rule 403 balancing.  *See Elk Lake*, 283 F.3d at 155 ("Congress did not intend for the admission of past sexual offense evidence to be mandatory; rather, Congress contemplated that Rule 403 would apply to Rules 413-415.").  The Third Circuit has held that in cases "when the past act sought to be introduced under Rules 413-415 is demonstrated with specificity . . . and is sufficiently similar to the type of sexual assault allegedly committed by the defendant," *id.* at 156, Rule 403 should be applied to Rules 413 through 415 "with a thumb on the scale in favor of admissibility."  *Id.* at 155; *see Merz*, 396 Fed. Appx. at 843.  Indeed,

> [i]n these archetypal cases, where the propensity inference that can be drawn from the past act evidence is greatest, Congress surely intended for the probative value of the evidence to outweigh its prejudicial effect, and, conversely, did not want Rule 403 factors such as

---

(11th Cir. 2012) (defendant's admission of past molestation of his niece admitted in child pornography case under Rule 414).

> undue delay, waste of time, confusion of the issues, etc.,
> to justify exclusion.

*Elk Lake*, 283 F.3d at 156 (citing 140 C.R. 15,209 (1994) (Statement of Rep. Kyl) (recognizing as the archetypal case one in which "there is a *clear* pattern of conduct by an accused who has been convicted of similar conduct") (emphasis in original)).

Beyond the propensity inference, courts can also look to the following factors, among others, in conducting its Rule 403 balancing analysis: the closeness in time of the prior acts to the charged acts; the frequency of the prior acts; the presence or lack of intervening events; and the need for evidence beyond the testimony of the defendant and alleged victim.  *Id.* at 156 (citing *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998)).

### B.   Evidence of the Defendant's Prior Instances of Child Molestation of the New Jersey Child Victims is Admissible under Federal Rule of Evidence 414

The government seeks to admit evidence of Schaffer's prior uncharged instances of child molestation of the New Jersey Child Victims, as described above at pages 6-7.  That evidence will come from the anticipated testimony of the New Jersey Child Victims at trial.

This evidence meets all of the admissibility requirements of Rule 414. First, the defendant is accused of "child molestation" here under Rule 414. Second, the evidence the government seeks to admit pertains to other instances of "child molestation" committed by the defendant.  Third, the

16

probative value of the evidence is not outweighed by its prejudicial effect.  The evidence should therefore be admitted at trial.

### 1.   The Defendant is charged with "child molestation" under Rule 414.

Schaffer is charged with two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), a crime found in Chapter 110 of Title 18 of the United States Code.  Therefore, he is "accused of . . . offense[s] of child molestation" as defined under Rule 414(d)(2)(B) because, under that Rule, any conduct prohibited by Chapter 110 constitutes "child molestation."  *See Prawdzik*, 2008 WL 3983811 at *4.

### 2.   The Defendant's prior sexual abuse of the New Jersey Child Victims were acts of "child molestation."

Under Rule 414(d)(2)(D), an "offense of child molestation" means a crime that involved "contact between the defendant's genitals . . . and any part of a child's body."  As described above, Child Victim 1 will testify that Schaffer took her to a hotel room and made her touch his penis with her hand and mouth.  Meanwhile, both Child Victim 1 and Child Victim 2 will testify that Schaffer locked them both in his home bathroom and forced them to touch his penis with their hands.

Based on this testimony, a reasonable jury could readily conclude by a preponderance of the evidence that these acts satisfy the definition of an offense of child molestation under Rule 414 and that the past acts were committed by Schaffer.  *See Elk Lake*, 283 F.3d at 154-55.

17

### 3.      The evidence not more prejudicial than probative.

Schaffer's conduct concerning other instances of abuse of the New Jersey Child Victims can be shown with specificity and is similar to the charged conduct here.  *Id.* at 156 (requiring the demonstration of specificity and similarity to trigger propensity presumption under Rule 414).

First, Schaffer's prior sexual molestation of Child Victims 1 and 2 can be demonstrated with specificity.  The government anticipates that both Child Victims 1 and 2 will testify in detail about Schaffer's sexual abuse of them.

Second, the similarity of Schaffer's past unrecorded abuse of the New Jersey Child Victims to the video-recorded abuse alleged here is significant. For instance, in one of the uncharged acts, Schaffer isolated Child Victim 1 in a hotel room—precisely as he did in the video recording with Child Victim 2 charged here.  Likewise, in both past instances of uncharged sexual abuse, Schaffer made the child victims try on several bathing suits before sexually molesting them.  He did the exact same thing on both video recordings charged here.  *See Schaffer*, 2014 WL 1515799 at *10 (finding that Schaffer's pattern of conduct toward the New Jersey Child Victims and the Brooklyn Victim by "enticing girls into situations in which they are alone with him and making them try on swimsuits before forcing them to engage in sexual contact" was "highly probative" evidence).

Other factors also demonstrate the strong probative value of this evidence.  To begin, the prior uncharged acts illustrate that Schaffer had access and was sexually attracted to both Child Victim 1 and Child Victim 2.

18

His repeated abuse of both of them will lend credibility to their accounts of the circumstances surrounding Schaffer's sexual molestation of them on the video recordings. Evidence of Schaffer's abuse would also serve to foreclose any defense by Schaffer that he did not have the requisite intent or knowledge, or that he was not the perpetrator of the video recordings. *See Merz*, 396 Fed. Appx. at 843 (finding that a defendant's prior conviction for a child-molestation crime was strongly probative of the defendant's identity and knowledge).

Moreover, the unrecorded past acts appear to have taken place during the same general time frame as the video recordings here. Both New Jersey Child Victims estimated that the uncharged episodes took place on or around the same general time frame as Schaffer's video recordings of them. *Elk Lake*, 283 F.3d at 156 (listing "closeness in time of the prior acts to the charged acts" as a relevant factor in the Rule 403 analysis). There also do not appear to have been any significant or relevant intervening events. *See id.*

Because the unrecorded prior acts can be described in detail and are very similar to the charged acts, this is a so-called "archetypal case" where the "propensity inference that can be drawn from the past act evidence is greatest," and Congress "surely intended" for the probative value of the evidence to outweigh its prejudicial effect. *Elk Lake*, 283 F.3d at 156. The evidence should therefore be admitted at trial.

**C.   Evidence of the Defendant's 2014 Conviction for Enticing the Brooklyn Victim to New Jersey to Engage in Illegal Sexual Activity is Admissible under Federal Rule of Evidence 413**

The government seeks to introduce, through testimony and documents, evidence of the sexual assault of the Brooklyn Victim by the defendant, including the videos depicting the Brooklyn Victim trying on bathing suits while Schaffer gropes her, and the charges, trial, and verdict with respect to Schaffer's conviction in the Eastern District of New York.  The Government would introduce such evidence through testimony by the case agent, and by admission of, among other things, the trial transcript, the videos introduced at the trial in the Eastern District of New York, the jury verdict sheet, and a redacted version of the Judgment of Conviction.

HSI Special Agent Robert Mancene investigated the crimes against both the Brooklyn Victim and the New Jersey Victims.  He also testified in and was present for the entire trial in the Eastern District of New York.  Accordingly, Special Agent Mancene can testify from personal knowledge at trial here about the circumstances leading to the enticement charges against Schaffer in the Eastern District of New York and Schaffer's resulting conviction.  He can also introduce the videos Schaffer created of the Brooklyn Victim.

As discussed below, this evidence meets all of the admissibility requirements of Rule 413.  First, the defendant is accused of sexual assault here under the express language of Rule 413.  Second, the evidence the government seeks to admit pertains to another sexual assault offense committed by the defendant.  Third, the probative value of the evidence is not

20

outweighed by its prejudicial effect.  The evidence should therefore be admitted at trial.

### 1.  The Defendant is charged here with a "sexual assault" for purposes of Rule 413.

The defendant is charged with two counts of production of child pornography, including: (1) one instance in which he made Child Victim 1 touch his penis with her hand and mouth before he either masturbated on top of her vagina or had sexual intercourse with her; and (2) another instance in which he touched Child Victim 2's genitals with his hand in a hotel room.

The first instance is a "sexual assault" as defined by Rule 413(d)(3) because it involved "contact, without consent, between the defendant's genitals . . . and any part of another person's body."  As a minor who was approximately 12 years old in the video recording, Child Victim 1 could not legally consent.  *See United States v. Rogers*, 587 F.3d 816, 820 (7th Cir. 2009) ("Rule 413 uses ['consent'] without qualifying it as actual or literal, and nothing suggests that Congress meant 'consent' to mean anything other than its general legal definition.  Minors lack the capacity to consent, and so sexual contact with a minor is always 'without consent.'").  Moreover, the videos plainly depict contact between the defendant's genitals and any part of Child Victim 1's body.

The second instance is also a "sexual assault" as defined by Rule 413(d)(2) because it involved "contact, without consent, between any part of the defendant's body . . . and another person's genitals or anus."  As a minor who

21

was approximately 14 years old in the video recording, Child Victim 2 also could not legally consent. *See Rogers*, 587 F.3d at 820. The videos show Schaffer brushing Child Victim 2's bare leg and touching in and around her genital area over her bathing suit with his hand.

### 2. The Defendant's conviction for enticement of the Brooklyn Victim to engage in illegal sexual activity was a "sexual assault."

The defendant was charged and convicted in the Eastern District of New York with coercing and enticing a girl under the age of 16 to travel from Brooklyn, New York to New Jersey, where the defendant intended to and did sexually assault her by penetrating her genitals with his penis. These offenses constitute "sexual assault" as defined by Rule 413 because 18 U.S.C. § 2422— one of the offenses Schaffer was convicted of in the Eastern District of New York—is part of chapter 109A. The offenses are thus considered "sexual assaults" under Rule 413(d)(1).[4] Moreover, as noted above, a minor cannot legally consent to sexual intercourse with an adult.

Based on the evidence the government seeks to introduce, a reasonable jury could readily conclude by a preponderance of the evidence that these acts satisfy the definition of an offense of sexual assault under Rule 413 and that

---

[4] Courts have routinely held that offenses under 18 U.S.C. § 2422 are "sexual assaults" under Rule 413. *See, e.g., Rogers*, 587 F.3d at 820 (finding that "attempt to entice a minor to engage in sexual activity" was a "sexual assault" under Rule 413); *United States v. Hitt*, 473 F.3d 146, 159 (5th Cir. 2006) (finding evidence admissible under Rule 413 where the defendant was charged under 18 U.S.C. §§ 2422 and 2423); *United States v. Blazek*, 431 F.3d 1104, 1108-09 (8th Cir. 2005) (finding that offenses charged under 18 U.S.C. § 2423(b) are "sexual assaults" for the purpose of Rule 413).

the prior act was committed by Schaffer.  *See Elk Lake*, 283 F.3d at 154-55 (requiring such a finding before admitting evidence under Rules 413-415).

### 3.    The evidence is not more prejudicial than probative.

As noted above, the touchstones for a Rule 403 analysis in the Third Circuit are: (1) whether the other act can be shown "with specificity"; and (2) whether the other sexual assault is "sufficiently similar" to the charged assault. If the other act and the charged act are specifically demonstrated and similar, Rule 403 should be applied to Rules 413 through 415 "with a thumb on the scale in favor of admissibility."  *Id.* at 155; *see Merz*, 396 Fed. Appx. at 843.

Here, there is no question that Schaffer's sexual assault of the Brooklyn Victim can be demonstrated with utmost specificity.  The government plans to admit not only Schaffer's judgment of conviction, verdict sheet, and trial transcripts describing Schaffer's sexual assault, but also video recordings clearly depicting the prelude to his sexual assault of her.

Moreover, the similarity between Schaffer's assaults of the Brooklyn Victim and of Child Victims 1 and 2 are striking.  In his assaults against the Brooklyn Victim and Child Victims 1 and 2, he isolated all of them: he had the Brooklyn Victim come back to his office alone the day after she had shown up with a friend; he sent other family members "out for coffee" so he could be alone with Child Victim 1 at his tow-truck office; and, with Child Victim 2, other family members were downstairs using the hotel swimming pool while Schaffer was alone with her in the hotel room.   Once alone with the victims, Schaffer had them try on several bathing suits, making them change in front of

23

him so he could see them naked.  He also "adjusted" each of their bathing suits, giving him an excuse to fondle their breasts and touch their genital areas.  After Schaffer had each of them try on bathing suits, he made them get naked and sexually assaulted them.  *See Schaffer*, 2014 WL 1515799, 12-cr-430 (ARR), *10 (E.D.N.Y. April 18, 2014) (finding that Schaffer's pattern of conduct toward the New Jersey Child Victims and the Brooklyn Victim by "enticing girls into situations in which they are alone with him and making them try on swimsuits before forcing them to engage in sexual contact" was "highly probative" evidence).[5]

Other factors also militate in favor of admissibility.  For example, the proximity in age of Child Victim 1 (12), Child Victim 2 (14), and the Brooklyn Victim (15) establishes a propensity for sexually assaulting minors and illustrates his sexual attraction to minors of that age.  *See Merz*, 396 Fed. Appx. at 843 (finding that closeness in age of victims supported a "sufficient propensity inference").

The events also happened fairly close in time to one another.  *Elk Lake*, 283 F.3d at 156 (listing "closeness in time of the prior acts to the charged acts" as a relevant factor in the Rule 403 analysis).  Schaffer assaulted Child Victims 1 and 2 in or around 2010, while he assaulted the Brooklyn Victim in 2012.  There also do not appear to have been any significant or relevant intervening events.  *Id.* (citing lack of intervening events as another relevant 403 factor).

---

[5] Schaffer also video recorded the sexual assaults of Child Victims 1 and 2, and the Brooklyn Victim reported that Schaffer had a video camera set up while Schaffer sexually assaulted her (although no recording was recovered).

Finally, the proof of Schaffer's conviction in the Eastern District of New York and supporting evidence will lend credibility to Child Victim 1's and Child Victim 2's account of Schaffer's sexual assault of them.  It would also serve to undermine any defense by Schaffer that he did not have the requisite intent or knowledge, or that he was not the perpetrator in the video recordings.  *See Merz*, 396 Fed. Appx. at 843 (finding that a defendant's prior conviction for a child-molestation crime was strongly probative of the defendant's identity and knowledge).

Because the past act can be shown with acute specificity and is substantially similar to the charged act, this is again a so-called "archetypal case" where the "propensity inference that can be drawn from the past act evidence is greatest," and Congress "surely intended" for the probative value of the evidence to outweigh its prejudicial effect.  *Elk Lake*, 283 F.3d at 156.  The evidence should therefore be admitted at trial.

## II. THE GOVERNMENT'S FORENSIC EXPERT SHOULD BE PERMITTED TO SLOW TO A NORMAL SPEED THE VIDEO RECORDING OF SCHAFFER'S SEXUAL ABUSE OF CHILD VICTIM 1 TO AID THE JURY'S OBSERVATION OF THE EVIDENCE

As described above, two videos recovered from Schaffer's computer at his business premises depict, among other things, his sexual abuse of Child Victim 1.  That sexual abuse included forcing Child Victim 1 to touch his genitals with her hand and her mouth and to lie prone while Schaffer ejaculated on her naked body.  The videos form the basis of Counts One and Three of the Indictment.

25

However, the videos as discovered on Schaffer's computer were configured such that they progress at a rapid speed (estimated to be at least four to five times faster than normal speed).  Although a lay person can still see what is happening on the recording, the speed of the videos makes it more difficult to observe the details of the events as they are happening.  Not only does the sexual abuse itself happen extremely quickly, but the contextual details of Schaffer's abuse—such as when he handed Child Victim 1 a rag to clean off his ejaculate from her genital area or when Child Victim 1 began to cry after Schaffer's sexual assault—are difficult to see with the naked eye unless slowed down.  The government therefore respectfully requests that the Court permit its forensic expert to create an edited version of the recovered videos that will proceed at a normal pace.  This will aid the jury's observation and understanding of what is happening on the recording.  The Government will make no other edits to the video, and it will otherwise be identical to the original in all respects except for the speed at which it progresses.  Additionally, the Government can provide both the original and the duplicate recordings to the Court in advance of trial so the Court can confirm that the duplicate is an accurate and authentic copy of the original except for its speed.

Such requests are routinely granted by courts in similar circumstances. *See, e.g., United States v. Seifert*, 445 F.3d 1043, 1045-46 (8th Cir. 2006) (affirming trial court's decision to enhance, enlarge, and speed up a video recording of an arson because it would aid the jury's understanding and it was still accurate, authentic, and trustworthy); *United States v. Plato*, 629 F.3d 646,

26

652 (7th Cir. 2010) (affirming trial court's decision to allow jury to watch surveillance video in slow motion); *United States v. Beeler*, 62 F.Supp.2d 136, 148-49 (D. Me. 1999) (permitting the jury to view an edited and enhanced surveillance video recording).  For example, in *Seifert*, 445 F.3d at 1044-45, the defendant was charged with arson and moved pretrial to exclude a digitally enhanced copy of an original video that showed a person (believed to be the defendant) near a building that eventually burned down.  At a hearing outside the presence of the jury, the Government's forensic expert testified that he used a computer program to "enhance" the image by speeding it up to "real time" (the original was "time lapsed"—*i.e.*, slower than normal speed).  *Id.* at 1045. The expert also explained that the original video was a "quad image," with the screen divided into quarters showing images from four different cameras.  *Id.* The expert enlarged the one relevant video (and discarded the other three), and he brightened the video—in particular the suspect and the surrounding area— because it was dark.  *Id.*

After reviewing both the original and duplicate (enhanced) video, the trial court admitted the enhanced version because:

> [i]t appears to the Court that the enhanced imagery depicts the same image [as the original tape].  It does so in a fashion which does not change the image, but assists the jury in its observation and viewing of the image, which will enhance their understanding.  I find that it's still accurate, authentic and trustworthy, and under those circumstances, I will permit its use in the trial.

*Id.*  The Court of Appeals for the Eight Circuit affirmed the trial court's ruling because the Government "laid a proper foundation for the video" when its

27

expert "described in detail each step" of the enhancement process.  *Id.*
Moreover, the court held that the defendant did not identify any facts that
"tend to show that the edited or enhanced . . . videotape [is] inauthentic or
untrustworthy."  *Id.* (quoting *Beeler*, 62 F.Supp.2d at 149).

The Government's proposed modification here requires far fewer changes
than those sanctioned by the court in *Seifert*.  The only change would be to
slow down the video recording to enhance the jury's ability to observe and
understand the events taking place.  The video would otherwise remain
completely intact and would show events precisely as they took place in real
life.  Because such a duplicate recording would be "accurate, authentic and
trustworthy," *see id.*, it should be admitted.

28

## **CONCLUSION**

For all of the reasons set forth above, the Government respectfully submits that this Court should: (1) issue an *in limine* Order admitting under Rule 414 the anticipated testimony of the New Jersey Victims about defendant Gregory Schaffer's uncharged abuse of each of them; (2) issue an *in limine* Order admitting the proffered evidence of defendant Gregory Schaffer's sexual assault conviction in the Eastern District of New York and evidence supporting it pursuant to Rule 413; and (3) issue an *in limine* order permitting the Government to admit into evidence an edited version of the video depicting defendant Gregory Schaffer's sexual abuse of Child Victim 1, which would be edited to play at a normal pace.

Respectfully submitted,

PAUL J. FISHMAN

By:    */s/ Jason S. Gould*
JASON S. GOULD
MEREDITH J. WILLIAMS
Assistant U.S. Attorneys

cc:    Patrick McMahon, Esq.
Leticia Olivera, Esq.

29