**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No.: 13-183 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| GREGORY SCHAFFER, | |
| Defendant. | |

**LINARES**, District Judge.

Currently before the Court are various motions *in limine* filed by Defendant and the Government. This Court held oral argument on February 14, 2017, and thereafter issued a written order resolving several of the motions raised and reserving on others. (ECF No. 45). This Opinion resolves the issues on which the Court reserved. An appropriate Order accompanies this Opinion.

### I.     Motion to Suppress Evidence Seized from July 31, 2012 Warrant

Defendant has moved to suppress evidence seized by law enforcement in effectuating the July 31, 2012 Warrant ("the Warrant") for violation of Fourth Amendment principles, or, in the alternative, for a hearing to determine whether suppression is warranted. (ECF No. 35, "Def.'s Mov. Br."). Specifically, Defendant alleges that the Warrant, which permitted law enforcement to search electronic devices seized as a result of the execution of the June 3, 2012 Warrant, was deficient in the following ways: 1) it was not particularized; 2) it was overbroad, and 3) it was not supported by probable cause. (Id. at 3-8). Defendant also contends that to the extent the Warrant

1

was lawful, the approximately two-month delay between the Government's seizure of the evidence and search of same was unreasonable. (Id. at 8-12). Having reviewed Defendant's motion, as well as the Government's opposition to same, and for the reasons detailed below, the Court denies Defendant's motion to suppress evidence obtained from the July 31, 2012 Warrant.

### A. The Warrant Was Sufficiently Particular and Not Overbroad

Defendant argues that the Warrant was not particularized and was overbroad, rendering it improper under the Fourth Amendment. (Id. at 3-7). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Thus, a Warrant must limit its "authorization to search to the specific areas and things for which there is probable cause to search," *Maryland v. Garrison,* 480 U.S. 79, 84 (1987), and describe the location to be searched and items to be seized with particularity. *United States v. Yusuf,* 461 F.3d 374, 393 (3d Cir. 2006). Where a defendant seeks to suppress such evidence obtained from an unreasonable search or seizure, he or she has the initial burden of proof. *See, e.g., United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995)(internal citations omitted).

Here, Defendant hinges his argument with respect to the particularity and overbreadth of the Warrant on a single line in one paragraph of the Warrant. (Def.'s Mov. Br. at 4,7). Specifically, Defendant points to Paragraph 16 of the Warrant, which contains the phrase: "including but not limited to." (Id.). Based upon this language, Defendant contends that "the warrant gives unlimited discretion to law enforcement officers in executing the search" and that law enforcement officers are "given carte blanche to search whatever they wish." (Id. at 4). Having reviewed the Warrant in its entirety, the Court disagrees.

Attachment A to the Warrant contains a list of the electronic items/devices to be searched. (Def.'s Mov. Br., Exh. B ("Warrant") at 3). Attachment B to the Warrant authorizes law enforcement to search the property identified in Attachment A "for the purpose of identifying and seizing information that constitutes fruits, evidence and instrumentalities of violations of Title 18, United Sates Code, Sections 875, 2422(a), 2422(b), 2251(a) and 2252(a)(4)(B)." (Id. at 4). Attachment B of the Warrant then proceeds to identify, in thirty-eight enumerated paragraphs, categories of materials for which law enforcement may search. Paragraph 16, referenced by Defendant in his motion, grants permission to search: "Records, information or correspondence pertaining to the possession, access with intent to view, transportation, receipt, distribution and reproduction of sexually explicit material relating to children, as defined in 18 U.S.C. § 2256, *including, but not limited to*: . . ." the categories of materials listed in the subparagraphs that follow. (Id. at 5).

Thus, the "including, but not limited to" language that Defendant argues renders the Warrant invalid is limited by the language proceeding it—that is, the language advising law enforcement to search for materials relevant to the production, possession and distribution of "sexually explicit material relating to children." As the Government explains, it "merely used that language to illustrate the types of information it could seize under that specific paragraph." (ECF No. 36, "Gov't. Opp. Br." at 15). This challenged phrase, in a single paragraph of the Warrant, does not render the Warrant invalid. *See, e.g., Andreson v. Maryland*, 427 U.S. 463, 479-82 (1976) (rejecting defendant's argument that inclusion of the phrase "together with other fruits, instrumentalities and evidence of crime at this (time) unknown" rendered warrants general and invalid, explaining that the phrase "is not a separate sentence," but rather "appears in each warrant

3

at the end of a sentence containing a lengthy list of specified and particular items to be seized . . .").

Moreover, the Third Circuit has "recognize[d] that the breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate." *Yusuf*, 461 F.3d at 395. Here, the Warrant itself identifies the offenses for which Defendant was being investigated, thus providing law enforcement with factual context as to the possible contents of the search. *See id.* at 395 (recognizing that warrants are limited where they "specifically enumerate[] federal crimes" for which evidence is being searched). Thus, the Court agrees with the Government that "[f]ar from giving law enforcement officers 'carte blanche' or 'unfettered power' to search for evidence in Schaffer's belongings, the July 2012 Warrant closely circumscribed what law enforcement could permissibly search for." (Gov't. Opp. Br. at 14). That is, the Warrant was sufficiently particular and was not overbroad.

## B. The Warrant was Supported by Probable Cause

Next, Defendant contends that the Warrant was not supported by probable cause because "[n]o information contained in the [supporting] affidavit suggests that child pornography could be found on the relevant electronic media." (Def.'s Mov. Br. at 7-8). The Government, as well as the Court, disagree.

A magistrate judge's issuance of a warrant based upon a finding of probable cause is afforded "great deference" by a reviewing court. *United States v. Hodge*, 246 F.3d 301 (3d Cir. 2001). A court reviewing a warrant must uphold the warrant if the issuing judge had a "substantial basis" for concluding by "a fair probability" that contraband or evidence of a crime would be found on items or premises to be searched. *United States v. Conley*, 4 F.3d 1200, 1205 & n.2 (3d Cir.

1993). In its probable cause determination, a court must consider the totality of the circumstances, first determining the relevant information within the affidavit, and then evaluating the credibility and reliability of that information. *See Illinois v. Gates*, 462 U.S. 213, 236–40 (1983); *United States v. Williams*, 3 F.3d 69, 72 (3d Cir.1993). If reasonable inferences can be drawn from the credible information provided in the affidavit so as to support a conclusion that there exists a fair probability that contraband or evidence of a crime will be found at the designated location, the court should defer to the Magistrate Judge's finding of probable cause. *See Gates*, 462 U.S. at 238.

In this case, the Magistrate Judge who issued the Warrant had a "substantial basis" for concluding by "a fair probability" that contraband or evidence of possession and production of child pornography would be discovered in the electronic devices. The Magistrate Judge was presented with an Affidavit of a Special Agent of the Department of Homeland Security ("DHS"), who has been with the DHS "or its predecessor agencies since 1996," and who has prior experience investigating crimes involving sexual offenses. (Warrant at 11, ¶ 1). The Special Agent was involved in the investigation leading to the pending charges. (Id.). The Affidavit closely details the circumstances under which the Government began its investigation into Defendant. Specifically, the Special Agent lays out the allegations by a then 15-year old female victim (the "Brooklyn Victim") that Defendant used e-mail communications to lure her to his office in Jersey City, New Jersey on two occasions. (Id. at 14-17). The Affidavit further details the Defendant's sexual assault of the Brooklyn Victim that occurred on the second occasion. (Id.). Of particular consequence to Defendant's motion, the Affidavit recounts the Brooklyn Victim's statements that Defendant took photos of her at his Office and that she observed a black camera or video camera, a red camera, and a memory card that Defendant "removed from the black camera and inserted [ ] into the laptop of [his] desk." (Id. at 18).

Based upon the information that came to light in the course of the investigation into the reported abuse by the Brooklyn Victim, on June 3, 2012, the Government obtained a warrant to search the Defendant's office. During the search, Federal Agents recovered, among other thing, the electronic devices that ultimately became the subject of the July 31, 2012 Warrant. Based upon the facts asserted in the Affidavit, the Special Agent stated that he "ha[d] probable cause to believe that [the electronic devices] contain information and evidence relating to extortion, coercion and enticement to travel for the purpose of engaging in illegal sexual activity, production of child pornography and possession of child pornography, in violation of [enumerated federal statutes." (Id. at 22). The Court agrees.

Having reviewed the Affidavit of the DHS Special Agent in its entirety, this Court finds that said Affidavit supports an inference that there was a fair probability that evidence of the charged offenses would be discovered on the electronic devices that were the subject of the July 31, 2012 Warrant. Accordingly, the Magistrate Judge's issuance of the July 31, 2012 Warrant is supported by probable cause. Defendant's motion to suppress based upon an alleged lack of probable cause is denied.

### C. The Delay between the Seizure of the Electronic Devices and the Search of Same was not Unreasonable

"[A] seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration for other reasons." *Segura v. United States*, 468 U.S. 796, 812 (1984). Here, Defendant argues that even assuming the Warrant itself did not violate the Fourth Amendment, the Government's approximately two-month delay in searching the electronic devices after seizing same from the Defendant's office did violate the Fourth Amendment. (Def.'s Mov. Br. at 9-12). The Court disagrees.

In determining whether the delay in executing a search warrant on previously seized property is unreasonable, therefore amounting to a violation of a defendant's Fourth Amendment rights, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983); *see also United States v. Stabile*, 633 F.219, 235 (3d Cir. 2011) (quoting same).

First, the Court finds that any possessory interest Defendant had in the seized property is minimal. Notably, and as the Government points out, "Schaffer *never* asked for the return of his property. Even after he was indicted on federal charges, he failed to file a motion for the return of his property under Fed. R. Crim. P. 41(g)." (Gov.'t Opp. Br. at 21). Defendant's failure to inquire into the electronic devices undermines any argument he may have that his possessory interest in said items was strong. *See, e.g., Stabile*, 633 F.3d at 235-36 (finding defendant's argument that he had a significant interest in his computer hard drives diminished by the fact that defendant did not ask after the items until eighteen months after their seizure). Moreover, any possessory interest Defendant had in the electronic devices was greatly reduced by the fact that he has been incarcerated ever since the execution of the June 3, 2012 search warrant. *See, e.g., Segura v. United States*, 468 U.S. 796, 812 (1984) (considering the fact that the proprietors of an apartment to be searched had been in custody during the pertinent time period when deciding whether the delay in obtaining a warrant was unreasonable).

Second, the Court finds that the Government had a strong interest in holding the electronic devices until they could conduct a proper forensic evaluation of same. Specifically, and as discussed above, the Government had probable cause to believe that evidence of child pornography would be found on the seized items. Moreover, the Court finds that the Government's justification

for the almost two-month delay is reasonable. (*See* Gov.'t Opp. Br. at 22-23). The Government has explained that the investigation was complex: It spanned two federal districts and "involved numerous victims and witnesses from different states, and multiple law enforcement agencies (both local and federal)." (Id. at 22). Moreover, the Government "had to identify a forensic expert capable of processing, handling, and analyzing the 12 electronic devices—any or all of which could have contained highly sensitive evidence of child-pornography crimes against multiple child victims." (Id. at 22). Once the Government identified a Federal Agent to conduct the forensic examination, the 12 devices were delivered to that Agent's laboratory on Long Island, New York. The Government promptly faxed the Agent the search warrant they obtained on July 31, 2012. (Id. at 23).

Given the above factual circumstances, the Court finds that Defendant's minimal possessory interests in the electronic devices are outweighed by the Government's significant interest in preserving said devices. Moreover, the nearly two-month delay in executing a search warrant on the devices was not unreasonable in an investigation spanning two districts and involving highly sensitive evidence. Accordingly, Defendant's motion to suppress the evidence seized based upon the delay in obtaining the July 31, 2012 Warrant is denied.

## II. The Government's Motion to Admit Evidence of Defendant's Prior Sexual Abuse[1]

The Government has moved, under Federal Rules of Evidence 413 and 414, to admit evidence of:

> the [D]efendant's prior instances of sexual abuse of two minor girls from New Jersey
> ("Child Victim 1" and "Child Victim 2," respectively, and collectively the "New Jersey
> Child Victims"), which was not recorded or photographed and is different from the sexual
> abuse depicted in the recorded videotaped images that form the basis of the instant

---

[1] The Court makes the following findings and rulings after having viewed a number video excerpts and hard-copy images of child pornography that the Government seeks to introduce at trial. *See United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012) (finding the district court erred in refusing to view videos depicting child pornography prior to issuing evidentiary rulings under Rule 403).

indictment; and (2) the [D]efendant's 2014 conviction of a 15-year-old girl from Brooklyn, New York (the 'Brooklyn Victim').

## A. Legal Standard

"Generally, evidence of other crimes or prior bad acts is not admissible to prove character or demonstrate action in conformity with those acts, but such evidence may be admitted 'for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Prawdzik*, 484 Fed. App'x. 717, 720 (3d Cir. 2012) (quoting FRE 404(b)).   Notwithstanding this Rule, Federal Rules of Evidence 413 through 415, enacted in 1995, "create a limited exception, in certain cases involving sexual assault or child molestation, to FRE 404(b)'s general bar against propensity evidence." *Frank v. County of Hudson*, 924 F. Supp. 620, 623-624 (D.N.J. 1996).   That is, these Rules provide that, in certain cases, "evidence of the defendant's commission of an offense of sexual assault or child molestation is admissible for any purpose." *United States v. Williams*, 458 F.3d 312, 317 n.5 (3d Cir. 2006).

Rule 413, entitled "Similar Crimes in Sexual-Assault Cases," provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault.   The evidence may be considered on any matter to which it is relevant."   FRE 413(a).   The Rule defines "sexual assault" as follows:

(1) any conduct prohibited by 18 U.S.C. Chapter 109A;
(2) contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus;
(3) contact, without consent, between the defendant's genitals or anus and any part of another person's body;
(4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or
(5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4).

Rule 414, although similar to Rule 413, specifically applies to crimes involving child molestation. Rule 414 provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." FRE 414(a). The Rule defines "child" to mean a person younger than 14 years of age, and provides a number of definitions of "child molestation," including, in pertinent part, "any conduct prohibited by 18 U.S.C. Chapter 110." FRE 414(d)(2)(B).

Notwithstanding that 413 and 414 provide an exception to Rule 404(b)'s general proscription against propensity evidence, "evidence proffered under [these] rules must still be shown to be relevant, probative, and 'legally relevant' under FRE 403." *Frank*, 924 F. Supp. at 624; *see also Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138 (3d Cir. 2001).

### B. The Proposed Evidence

The Government moves to admit, by way of the testimony of the two New Jersey Child Victims, evidence of "a couple of specific events that took place at the hands of Mr. Schaffer, according to them, but that were unrecorded and are separate from the recorded incidents that gave rise to the indictment." (Tr. of 2/14/17 Hrg. ("Tr.") 42:15-20). The Government also seeks to admit, via the testimony of a Federal Agent, a summary of the Brooklyn conviction.

### i.    Prior Sexual Misconduct as to the New Jersey Child Victims

The Government has identified two specific events to which the New Jersey Child Victims will testify. First, the Government anticipates that Child Victim 1 will testify as to an incident that occurred when she was 12 years old, where Defendant allegedly lured her from her home to a hotel by promising to take her to a video game store. (Gov't. Mov. Br. at 6). According to Child Victim 1, at the hotel, Defendant "showed her pictures of other girls in bathing suits on his laptop

computer," had her put on a bathing suit, and proceeded to sexually assault her by "forc[ing] her

to touch his penis with her hand and to perform oral sex on him" and "touch[ing] Child Victim 1's

vagina." (Id. at 6-7). The Court hereinafter refers to this incident as the "video game incident."

Second, the Government intends to introduce, by way of the testimony of both New Jersey

Child Victims, an incident in which Defendant allegedly locked both Victims in a bathroom at his

residence, pointed them to a bundle of "road flares or something similar," and told them that it was

dynamite that would explode if they attempted to escape. Defendant then made both Child Victims

touch his genital area. (Id. at 7; Tr. at 47-48). During this incident, Defendant allegedly had both

Child Victims trying on bathing suits. (Tr. at 48:22-25). Child Victim 2 estimates that at the time

of this event she was 14 years old, which, according to the Government, would make Child Victim

1 approximately 12 years old. (Id. at 7). Hereinafter, the Court will refer to this proposed evidence

as the "dynamite incident."

### ii.     Criminal Conviction as to the Brooklyn Victim

The Government also moves to admit evidence of Defendant's conviction with respect to

the then 15-year-old Brooklyn Victim. As represented by the Government at Oral Argument, the

facts surroundings the Brooklyn Victim are as follows:

> [A]gain, an email communication with a 15-year-old minor girl from
> Brooklyn in which he lied to her and told her that he was the manager or operator
> of several stores in a local mall. She needed a job very badly, so she eventually in
> two consecutive days of March of 2012 came to Mr. Schaffer's offices in New
> Jersey. The first time with a friend, and the second time he arranged it so that she
> would come alone.
>     Through a series of machinations involving sex contracts and
> confidentiality agreements, he made her believe that she had contractually agreed
> to have sex with him.
>     He then told her that if she did not have sex with him, he would find a way
> to either sue her, her grandmother, who I believe was her caretaker at that point, et
> cetera. He made her then try on bathing suits, which he video recorded after when
> he then sexually assaulted the 15-year-old minor girl from Brooklyn. That, of

course, led to the trial and conviction in the Easter District of New York in July of 2014.

(Tr. at 49:16-50:10).

The Government has advised the Court of its intention to introduce this evidence through the testimony of an Agent, who would "basically [] give a summary of his investigation into the crimes that were eventually charged in the Eastern District, no more than a couple of minutes, say that those facts were presented at trial and that led to the conviction of the [D]efendant on the charged crimes there, and pretty much leave it at that once he has testified to the conviction." (Tr. at 43:11-19). Based on this representation, it is not entirely clear to the Court what the exact scope of the Agent's testimony will be. However, given the Government's arguments that the Brooklyn conviction is relevant to show Defendant's modus operandi and sexual attraction to girls of the Brooklyn Victim's age, the Court's analysis operates under the assumption that the Government will, in fact, introduce these relevant facts into evidence.

### C. Discussion

### i.      The Applicability of FRE 413

Defendant opposes the Government's motion. (ECF No. 41, "Def.'s Opp. Br."). First, Defendant argues that because Defendant has been charged with possession and production of child pornography, as opposed to a "sexual assault," the instant case does not fall within the purview of Rule 413. (Id. at 1-2). Therefore, Defendant states that the evidence the Government is attempting to introduce through Rule 413—specifically, Defendant's conviction relating to the Brooklyn Victim—is inadmissible.[2]

---

[2] The Government and Defendant appear to agree that Rule 413 (applicable to sexual assault cases, generally), as opposed to Rule 414 (applicable to child molestation cases specifically), applies only with respect to prior conduct against the Brooklyn Victim. It appears to the Court, however, based upon the Government's arguments in its opposition brief, that at the time of the dynamite incident,

The Government maintains that although the Indictment does not charge Defendant with "sexual assault, it charges a crime under federal law, that is, production of child pornography involving conduct, where the victim's hand and mouth touched the defendant's genitals." (Tr. at 55:20-24). In other words, the sexual assault—particularly as defined in FRE 413(d)(2)-(3)—is "subsumed within" the charges of production of child pornography. (Tr. at 54:23-25). The Court agrees.

To prove its case against Defendant for the production of child pornography, the Government must prove that Defendant "employ[e]d, use[d], persuade[d], entice[d], or coerce[d]" the New Jersey Child Victims to "engage in[] any sexually explicit conduct for the purpose of producing" child pornography. 18 U.S.C. § 2251(a). In fact, in both counts of the Indictment charging Defendant with production of child pornography, the Government alleges that Defendant "did knowingly employ, use, persuade, induce, entice, and coerce" the New Jersey Child Victims "to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." While the statute does not specify state that the "sexually explicit conduct" must involve the defendant, in this case, the Government will introduce evidence which it submits will show that in the course of producing child pornography, Defendant sexually assaulted the New Jersey Child Victims. Thus, the charged conduct can be said to incorporate an element of "sexual assault," thereby falling within the purview of Rule 413.

This holding that Rule 413 applies in the absence of an express charge of sexual assault is not unprecedented. In *United States v. Foley*, for example, the defendant was charged with

---

Child Victim 2 was 14 years old. Because Rule 414 defines a "child" as "a person *below* the age of 14," that incident would, like the conviction of the Brooklyn Victim, fall *outside* the realm of 414 evidence. In any event, in light of this Court's ruling that the Rule 414 applies in this case, the distinction is of no consequence.

possession, production and distribution of child pornography and with taking a child across state lines for the purpose of engaging in a sex act. 740 F.3d 1079, 1081 (7th Cir. 2014). Notably, as in the instant case, the investigation into the defendant uncovered a video in which the defendant appeared "touching a minor's genital and adjusting the angle of the camera." *Id.* at 1082. Against defendant's objections, the district court admitted evidence under Rule 413 that the defendant had previously molested a minor even though, like Mr. Schaffer in this case, the defendant was not actually charged with a "sexual assault." *Id.* at 1086-87. The Seventh Circuit found no error in the district court's findings "that although Foley was charged under 18 U.S.C. Chapter 110, his crimes involved conduct that was also prohibited under 18 U.S.C. Chapter 109A, so his crimes would satisfy the first definition of 'sexual assault' under Rule 413(d)(1)." *Id.* at 1086-87; *see also United States v. Batton*, 602 F.3d 1191, 1197 (10th Cir. 2010) (holding that, given subparagraph (d)(5)'s definition of "sexual assault" as "an attempt or conspiracy to engage in conduct described in subparagraphs (d)(1)-(4)," a defendant charged with transporting a minor in interstate commerce with the intent that the minor engage in a sex act "need not . . . complete sexual acts before their conduct constitutes a sexual assault for Rule 413 purposes").

    ii.    **FRE 403 Analysis**

    Having determined that the prior misconduct falls within the purview of Rules 413 and 414, the Court must nevertheless find that same is relevant and not unduly prejudicial. *See, e.g., Frank*, 924 F. Supp. at 624; FRE 413(a), 414(a) (permitting evidence to "be considered on any matter to which it is relevant"); *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138 (3d Cir. 2002) (explaining the application of Rule 403 to evidence admissible through Rules 413-15). At the outset, the Court notes "that there is 'an underlying legislative judgment . . . that the sort of evidence that is admissible pursuant to proposed Rules 413-15 is typically relevant and probative,

and that its probative value is normally not outweighed by any risk of prejudice or other adverse considerations." *See, e.g., Elk Lake*, 283 F.3d at 156. The Court must nevertheless make a finding as to the relevance and prejudicial effect of evidence admissible under Rules 413 and 414. *See id.* at 155-56.

There can be little dispute that the prior misconduct is relevant. In each of the prior incidents, Defendant either had the victim try on a bathing suit or made the victim view images of girls wearing bathing suits. The allegations underlying the charged offenses, as represented by the Government, are that Defendant had both New Jersey Child Victims try on bathing suits during the production of the child pornography. Thus, as the Government convincingly argues, these three prior incidents are relevant to show Defendant's modus operandi for having his victims try on bathing suits. (Tr. at 47:1-3). Additionally, the Government argues that the prior incidents are relevant to Defendant's attraction to girls of a certain age range, as well as his ability to lure and isolate young women. (Id. at 47:6-10). The Court agrees.[3]

Next, the Court must decide whether the prior misconduct is unduly prejudicial, and thus bared under Rule 403. *See, e.g., Elk Lake,* 283 F.3d at 155-56. Defendant argues that the introduction of the prior misconduct relating to both the New Jersey Child Victims and the Brooklyn Victim would be unduly prejudicial. (Def.'s Opp. Br. at 2-3). At oral argument, Defendant further argued that the evidence that the Government is seeking to admit—under both Rules 413 and 414—is entirely cumulative because the relevancy of such evidence (that is, the bathing suit element, the isolation of the victims, and the victims' ages) is already captured on the videotapes underlying the pending charges. Further, with respect to the evidence of the Brooklyn

---

[3] The Court recognizes that even if the prior misconduct is not, in fact, admissible under Rules 413 or 414, it could potentially be admitted under Rule 404(b) as evidence of, for example, opportunity, intent, and plan.

Victim, Defendant argues that because that case did not involve videotaped footage of a sexual assault, it has no bearing on the instant case. (Tr. at 59:21-25). The Court disagrees.

The Third Circuit has explained that where the prior offense sought to be introduced under Rules 413-415 can be "demonstrated with specificity . . . and is sufficiently similar to the type of sexual assault allegedly committed by the defendant," then Rule 403 should be applied "with a thumb on the scale in favor of admissibility." *Elk Lake*, 283 F.3d at 138. Here, the Court finds both of these factors to be satisfied. First, based upon the Government' anticipated evidence of these prior acts—including the testimony of the New Jersey Child Victims, both of whom who will corroborate the dynamite incident, as well as the testimony of a Federal Agent with respect to the Brooklyn conviction—the Court finds the incidents can be proven with sufficient particularity. Second, the Court finds the prior misconduct similar to the conduct underlying the instant charges. That is, each prior incident, like the conduct underlying the pending charges, allegedly involved the isolation of minor female victims ranging in age from twelve to fifteen, in which they were either made to look at photos of other females in bathing suits or try on bathing suits. Moreover, the relatively close proximity between the prior misconduct and the charged conduct, with the Government giving "a very conservative[]" estimate of "within two years," militates in favor of admissibility. *Id.* (citing *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998).[4] Accordingly, the Court finds that the admission of the prior misconduct is not unduly prejudicial and therefore admissible. As the Court indicated during the February 14th Oral Argument,

---

[4] Other factors courts consider are: "the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and the alleged victim." *Elk Lake*, 283 F.3d at 156 (quoting, in full, *Guardia*, 135 F.3d at 1330)). In this case, there does not appear to be any intervening events that would militate in favor of exclusion, nor has Defendant argued that any testimony beyond that offered by the Government would be required.

Defense Counsel should prepare a limiting instruction with respect to the evidence admitted under Rules 413 and 414 for the Court in advance of trial.

Defendant rejects the Government's plan to introduce the evidence relating to the Brooklyn Victim through the testimony of an agent. At oral argument, Defense counsel argued that introducing the circumstances of the Brooklyn Victim is prejudicial and denies the Defendant a right to meaningfully cross-examine the testifying agent, whose testimony would "not [be] base[d] at all on anything but a summary that is prepared by the Government." (Tr. at 60:8-16). In response to these concerns, the Court first notes that the Agent's testimony will be subject to all Rules of Evidence. Moreover, Defense counsel's request to be advised prior to such testimony as to what is going to be proffered by the Agent is granted. The Court hereby orders the Government to produce a summary of the Agent's testimony on this subject to Defendant at the same time that the Government produces materials under *Jencks* and *Giglio*.

### III.    The Acer Laptop

On February 10, 2017, the Government filed a supplemental motion *in limine*, in which it advised the Court that the Government cannot locate the Acer laptop computer which was seized during the execution of the June 3, 2012 search warrant. (ECF No. 40). In so notifying the Court, the Government requested

> an order that the Government's loss of the Acer laptop does not violate Defendant's due process rights because: (1) a forensically sound, authentic, and exact image of the Acer laptop exists, which will be introduced into evidence by the Government after laying a proper foundation regardless of the availability of the Acer laptop itself; (2) there is no evidence that the Acer laptop contained any exculpatory information; and (3) the Government did not act in bad faith when it lost the Acer laptop.

(ECF No. 40 at 1). In lieu of introducing the Acer laptop itself, the Government seeks to introduce a duplicate forensic image of the laptop's hard drive, which duplicate was created by the Secret

Service Agent who conducted a forensic examination of the laptop.  (Id. at 4; ECF No. 46-2, Aff. of John Simonello).

The Court finds that Defendant's due process rights are not violated by the loss of the laptop.  In order for Defendant's due process rights to be violated as a result of the missing laptop, the laptop "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the [D]efendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984).  Moreover, the lost laptop will only be found to violate Defendant's due process rights if he can demonstrate that the Government acted in "bad faith." *Arizona v. Youngblood*, 488 U.S. 1, 58 (1988).

Defendant in this case has not established any of the above requirements.  First, he has not offered any argument that the Acer laptop contained exculpatory materials.  Second, the evidence contained on the Acer laptop is not irreplaceable; rather, the Special Agent who conducted the forensic examination of the laptop explained in his Declaration that he has created an "exact duplicate copy of the hard drive" (ECF No. 46-2, ¶ 7), as confirmed in a forensic acquisition report (id. ¶ 8).

Lastly, the Court finds that the Government has not acted in bad faith.  The Court reaches this conclusion after reviewing the three Declarations submitted by the Government in support of its motion.  (ECF No. 46).  That is, the Government has reviewed the Declarations of: (1) Secret Service Agent John Simonello, who conducted the forensic examination (ECF No. 46-2); (2) the DHS Special Agent, Robert Mancene, who certified, among other things, that to the best of his knowledge, all evidence from the E.D.N.Y. trial was properly transported back to the U.S. Attorney's Office in the E.D.N.Y (ECF No. 46-1, ¶ 9) and; (3) an Assistant United States Attorney

from the E.D.N.Y. who explained the circumstances surrounding the missing laptop (ECF No. 46-3).  The Court has also reviewed the Custody Receipt for the Acer Laptop, which supports the information provided in the Declarations.  Having reviewed these papers, the Court finds no evidence that the Government acted in bad faith with respect to the missing laptop.  Moreover, Defendant "does not question the veracity of these statements," and explains that "[a]s such, it is clear that the Government did not act in 'bad faith' when it lost the laptop.'" (ECF No. 47).

Defendant does request, however, that the Court nevertheless exclude the evidence obtained through the Acer laptop, noting that Defendant "has raised concerns about how and when the evidence was collected." (ECF No. 47).  Specifically, Defendant explained that "the expert retained by the defense is unable to evaluate these concerns unless they have access to the motherboard of the laptop." (Id.).  However, Defendant has not rested his "concerns" on anything more than mere speculation.  Such speculation does not support Defendant's motion to suppress the evidence gathered from the Acer laptop.

To the extent Defendant is taking the position that the forensic image of the laptop's hard drive should be excluded, the Government contends that "[t]he absence of the original Acer laptop is not a basis to exclude a duplicate copy" under the Federal Rule of Evidence governing admission of duplicates.  (ECF No. 48, "Gov't Reply Br. at 1).  Specifically, FRE 1003 provides that a "duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FRE 1003.  Defendant has not raised a genuine challenge "as to the authenticity of the original" (i.e., the Acer laptop), nor has he persuasively argued that it would be unfair to admit the duplicate.  As stated above, Defendant's vague and unsubstantiated concerns relating to "how and when the evidence [from the laptop] was collected" are insufficient to support this burden.  Thus, provided that the

Government lays a proper foundation for the introduction of the duplicative forensic evidence, and provided that the introduction of that evidence otherwise complies with the Federal Rules of Evidence, the Court finds that same is generally admissible as a duplicate under FRE 1003. The Court reserves its right to revisit this issue should any evidence be elicited at trial that could alter the above analysis.

For these reasons, the Court finds that Defendant's due process rights have not been violated by the loss of the Acer laptop. The Court further rejects Defendant's request to exclude evidence taken from the laptop, including the forensic image. Although the Court denies Defendant's request to exclude this evidence, the Court will entertain a liberal approach as to the scope of the cross-examination respecting this issue, to the extent that the Defendant can demonstrate to the Court that this line of questioning is otherwise proper. The Court reserves its right to re-visit the issues respecting the Acer laptop and the forensic image thereof to the extent any information is elicited during the trial that could have the potential to alter the analysis above.

## IV.    Conclusion

For the reasons stated above, Defendant's motion to suppress the evidence seized as a result of the July 31, 2012 Warrant is denied. The Government's motion to admit the prior misconduct is granted, to the extent that admission of same otherwise complies with the Federal Rules of Evidence. The Government's motion for the entry of an order that Defendant's due process rights have not been violated by the loss of the Acer laptop is granted, and any request by Defendant to exclude evidence obtained from the Acer laptop or the forensic image of the laptop's hard drive is denied.

DATED:        February 24th, 2017

IT IS SO ORDERED.

_____

JOSE L. LINARES, U.S.D.J.